## Richmond

STANLEY WILLNER, ET AL. v. PAUL D. WOODWARD.

June 22, 1959.

Record No. 4950.

Present, All the Justices.

The opinion states the case.

*Thomas H. Willcox, Jr.* (*Willcox, Cooke, Savage & Lawrence*, on brief), for the plaintiffs in error.

*William L. Ward* (*Woodward & Ward*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

Stanley Willner and Carol G. Willner, hereinafter called plaintiffs, instituted action against Paul D. Woodward, herein after called defendant, to recover damages sustained because of Woodward's al-

leged negligence in the drawing of plans and approval of plans drawn by others for construction of a residence, and also resulting from defendant's alleged negligence in supervising the construction of the building. At the conclusion of plaintiffs' evidence, the court sustained defendant's motion to strike and entered summary judgment. We granted plaintiffs an appeal.

During the trial plaintiffs conceded that the defects in the building complained of were in the heating and air-conditioning system or in the installation of the system. When the court struck the evidence, it was on the ground that plaintiffs had failed to prove the existence of a contract that imposed any duty on defendant in regard to the heating and air-conditioning system installed in the building. It is thus necessary to recite the pertinent evidence offered by plaintiffs to prove the terms of their agreement with defendant.

Plaintiffs desired to build a residence on a lot they owned in Norfolk, Virginia, and after consulting with defendant, a qualified architect, he agreed to draw the plans and supervise construction of the building for which he was to receive four per cent for the plans and two per cent for supervision, *i.e.*, a total of six per cent of the construction costs.

Pursuant to this oral agreement defendant drew a set of plans which was put out for bids, but all the bids were rejected as too high. A second set of plans was prepared by defendant, and a bid of $14,957.00 made by J. T. Brown, general contractor, was deemed acceptable. The plans bid on by Brown provided for a radiant circulating hot water heating system embedded in the concrete slab floor. However, before the contract with Brown was signed by plaintiffs, Mr. Stainberg, an agent for Acme Plumbing Corporation, approached Stanley Willner and suggested that his firm could install a combination heating and air-conditioning system for very little additional cost. Stanley Willner said he referred Mr. Stainberg to defendant, his architect, as "I was leaving everything to him. If he O.K.'d it, it was all right with me." When asked if he "discussed this subject with Mr. Woodward," Willner said:

"A. I called him up and asked him if he thought it was all right, and he said yes, he thought it would be all right.

"Q. What was all right?

"A. To change the plans would be all right.

"Q. Did you have any further negotiations yourself with Mr. Stainberg?

"A. Not to my knowledge, because I did not know anything about it. I left it up for him to negotiate with Mr. Woodward."

Thereafter defendant saw Stainberg and made suggestions for changes in the plans and discussed in general the type of floor duct system, types of equipment, location and size.

The respective contracts finally agreed on with Brown and with Acme were prepared in defendant's office, and plaintiffs were called by defendant to come and sign them. Stanley Willner said he signed the contracts on defendant's representation that they were all right. The contracts are in similar language. The Brown contract provides for construction of the house in accordance with defendant's plans and specifications with the exception of the plumbing and heating. The Acme contract provides that it shall "furnish and install a complete system of heating and air-conditioning, ventilation in accordance with approved layout," and "all other plumbing works shall be in accordance with the plans and specifications secured from the office of Paul D. Woodward, Architect." Neither contract mentions any requirements for supervision or approval by the defendant nor requires that there be written requisitions for payments approved by the architect. As the work progressed and the contractors looked to the owner for payments, Stanley Willner always checked with the architect to be sure it was all right before payments were made.

After completion of the building, plaintiffs paid defendant six per cent on each contract, the Brown contract of $12,901.50 and the Acme contract of $3,530.00, or a total of $985. Defendant, called by plaintiffs as an adverse witness, acknowledge that a part of the sum paid him was in contemplation of his approval of the Acme job. He, however, said that his undertaking and duty was limited to approval of the "general type system" to be installed by Acme and did not include approval of the manner and means by which installation of the system was accomplished.

The heating and air-conditioning system never worked satisfactorily. The plans and layout were inadequate in that they did not require the ducts to be encased in concrete and did not provide for a fire wall. Insufficient heat reaches the far bedrooms, and after rains, the ducts fill with water, cutting off all heat and often requiring a pump to be run to clear the ducts of water. Water in the ducts indicates either improper design or installation. Defendant admitted that he did not inspect the duct work before it was

covered with cement although he would have done so had he felt responsible; he relied entirely on the design and system of the contractor, Acme.

R. H. Tatum, a heating engineer, testified that only ten per cent of the air was going through the ducts because of the water in them. There was no way to correct the heating and air-conditioning system as installed, and Tatum recommended the installation of hot water baseboard heat around the perimeter of the house, not using any of the ducts installed by Acme. He also recommended the installation of a new duct for air-conditioning running through the kitchen and reaching the interior corridor. Though this arrangement would produce adequate heat, the air-conditioning would give only partial relief to the kitchen, adjacent to the unit, and could not be run back through the bedrooms. This would cost $2,000, and the difference in value between the house with such a system and the value if adequately air-conditioned would be $1,000.

Since plaintiffs' evidence was stricken, they are entitled to have all conflicts in the testimony and all reasonable inferences deducible therefrom resolved in their favor. *Hoover, Adm'r* v. *Neff & Son, Inc.*, 183 Va. 56, 31 S. E. 2d 265.

The evidence is sufficient to establish that Stanley Willner consulted with defendant and relied upon him for advice as to the efficiency of the Acme heating and air-conditioning system. Upon consultation with Acme's agent, defendant told Willner that the system was "all right." Thereafter defendant had plaintiffs execute the contract with Acme in his office, which provided for Acme to furnish and install a heating and air-conditioning system in accordance with approved layout and that all other plumbing was to accord with plans and specifications obtained from defendant's office. Defendant also admitted that he did not inspect the duct work before it was covered with cement but relied entirely upon the design and system as furnished by the contractor. Yet he was paid and accepted six per cent of the construction costs of the Acme contract, as well as the Brown contract. It is not denied that the heating and air-conditioning system, as installed, is inefficient.

The evidence, when viewed in the light most favorable to plaintiffs, presents issues of fact as to whether or not defendant undertook, as a part of his ultimate contract with plaintiffs, to approve and did approve the Acme system of heating and air-conditioning, and also undertook to supervise installation of that system.

If defendant did, by his agreement, undertake these obligations, then he was charged with the duty to exercise reasonable care, technical skill and ability in the performance of his contract. *Mann* v. *Clowser*, 190 Va. 887, 59 S. E. 2d 78; *Surf Realty Corp.* v. *Standing*, 195 Va. 431, 78 S. E. 2d 901; 25 A. L. R. 2d 1086.

Whether or not defendant exercised the requisite care, technical skill and ability were also questions to be determined by the jury. The factual issues presented should have been submitted to the jury.

*Reversed and remanded.*