Noy HAYNES, Plaintiff,

v.

JAMES H. CARR, INC., and Pacific Lumber Inspection Bureau, Defendants.

Civ. A. No. 5114.

United States District Court
E. D. Virginia,
Richmond Division.

Feb. 20, 1969.

Leonard B. Sachs, Norfolk, Va., Allen, Allen, Allen & Allen, Richmond, Va., for plaintiff.

Henry H. McVey, III, Richmond, Va., for defendant Carr.

Bremner, Byrne & Baber, L. Paul Byrne, Richmond, Va., for defendant Pacific Lumber.

## MEMORANDUM OPINION

KELLAM, District Judge.

Noy Haynes (Haynes) filed his complaint against James H. Carr, Inc. (Carr) and Pacific Lumber Inspection Bureau (Pacific) to recover damages for injuries sustained when wooden trusses used in the construction of a church in Chesterfield County, Virginia, collapsed. Each defendant filed a motion to dismiss. Interrogatories were filed and answered, depositions taken, and oral evidence offered on the motions. From these, the hereinafter stated facts are established.

Plans for the construction of the church were prepared by Charles Shiflett and Thomas A. Gresham Associated Architects (Architects), who were assisted by Torrence, Dreelin, Farthing and Buford, Consulting Engineers (Engineers), in designing the structural portion of the building which included the wooden trusses. Plans and specifications for the trusses were prepared by Engineers and incorporated in the plans by Architects. The construction was let to bids. The general contractors sought and obtained bids from various sub-contractors for certain specified portions of the general contract. Earl M. Childrey, Inc. (Childrey) a general contractor, became the successful bidder, for a "turnkey" job. Carr was a sub-contractor. Carr had previously submitted a bid to Childrey for the truss work, which was incorporated into the bid submitted by Childrey for the job. When Childrey was awarded the contract, he sub-contracted with Carr for the truss work. After Carr was awarded the sub-contract for the truss work, Carr made shop drawings from the plans and specifications of the Architects and submitted the shop drawings for approval to Childrey, who passed them along to the Architects and Engineers. The sub-contract of Carr provided he would assemble them at the job-site. The timbers were pre-cut, the holes drilled, etc., and the timbers, bolts, rings, etc., delivered to the job-site. Carr's employees then went to the job-site, assembled the trusses and stacked them on the job, at the location designated by Childrey. Thereafter, while Childrey was erecting the trusses, some of them fell and/or collapsed, injuring plaintiff.

The record does not disclose where or from whom Carr purchased the timbers used in the construction of the trusses. Following the collapse of the trusses, an investigation disclosed that timbers used in the construction of the trusses had been graded and inspected by PLIB. PLIB is chartered in the State of Washington, with its principal office in Seattle, and with branch offices in Oregon, California, British Columbia and Canada. In addition, it operated in Alaska.

It is a non-profit service organization. It is a "grading agency for grading lumber for anyone that is dealing in lumber products" that cares to have its grade stamp or certification. Its operation areas are Washington, Oregon, California, British Columbia, Canada and Alaska. All of its inspectors reside within the above area. It has no agents or officers in any other areas. It has no officers, agents or employees in Virginia, nor has it graded lumber in Virginia. It does not sell or ship lumber or other goods or merchandise, nor does it have any control or interest in where lumber graded by it is sold or used. It did not and does not deal with Carr. All its revenues arise from inspection charges. The charge is based upon the inspector's wages plus an overhead fee for carrying on the organization, termed as a per diem fee. It derives no revenues from any services performed in Virginia. It does no advertising and has sent no materials to Virginia. It has no contract to supply or furnish its services or anything else in Virginia, nor has it engaged in any course of conduct nor derived "substantial revenues" for services performed in Virginia. It appears the only time it had an employee in Virginia was when, following the collapse of the trusses, it had an employee come to Virginia and make an investigation of the material used in the trusses. This investigation established that some of the timbers bore the inspection stamp of PLIB.

Plaintiff's action is based upon a breach of express and implied warranty of the quality of the materials used in the trusses, and negligence in the inspection, grading and marking of the lumber, and fabrication of the trusses.

The motions filed by the defendants deal with separate legal issues and will be dealt with separately.

## MOTION OF PLIB

PLIB is alleged to be a non-resident of Virginia, and it is. Process for it was served on the Secretary of the Commonwealth of Virginia, pursuant to the provisions of the Long Arm Statute. This defendant moves to dismiss the action or quash the return of service of summons.

The burden of pleading and when challenged of supporting jurisdictional facts by competent and preponderant proof is upon the plaintiff. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 182, 189, 56 S.Ct. 780, 80 L.Ed. 1135; Kvos, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183; Bowman v. White, 388 F.2d 756, 760 (4th Cir. 1968); Hedberg v. State Farm Mutual Auto Ins. Co., 350 F.2d 924, 929 (8th Cir. 1965). The complaint must state on its face the grounds for the Court's jurisdiction. Federal Rules of Civil Procedure, Rule 8(a) (2). Bowman v. White, supra, Gold-Washing and Water Co. v. Keyes, 96 U.S. 199, 24 L.Ed. 656; Ivey v. Frost, 346 F.2d 115, (8th Cir. 1965).

To exercise jurisdiction over PLIB, an out-of-state-defendant, on the facts of this case, plaintiff must point to some United States statute, Virginia statute or rule of court authorizing such assertion of jurisdiction. There is no such United States statute. Hence, we turn to the Long Arm Statute of Virginia, Title 8, Chapter 4.1 of the Code of Virginia 1950, as amended in 1964, the pertinent section being 8–81.2. That Chapter provides that whenever "person" is used in the Chapter, it shall include "corporation, etc." The pertinent parts of the Chapter are:

§ 8–81.2. When personal jurisdiction over person may be exercised.

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

(1) Transacting any business in this State;

(2) Contracting to supply services or things in this State;

(3) Causing tortious injury by an act or omission in this State;

(4) Causing tortious injury in this State by an act or omission out-

side this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

(5) Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; * *.

Sub-paragraphs (a) (6) and (7) of said section deal with real property in this State, and contracts of insurance. Sub-paragraph (b) provides that whenever "jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted." Such is the case here.

Applying the facts as determined from the record, it is clear PLIB transacts no business in Virginia. It has no office here, is not licensed to do business here, and has no employees, agents or officers here. It has not entered into any contract to do business, sell or furnish materials, services or things in Virginia. It has shipped no goods, merchandise or things to Virginia. It has no customers or contacts in Virginia. It does not manufacture, fabricate, buy, sell or otherwise deal in any merchandise. Haynes contends that when a representative of PLIB came into Virginia to inspect the lumber which had been used to construct the trusses, this single act brought PLIB within the provisions of the statute of transacting business in the State. It is difficult to believe that the courts could hold such a single act as constituting transacting business. It appears to be only an incidental activity.

Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502, 507 (4th Cir. 1956); Beaty v. M. S. Steel Co., Inc., 401 F.2d 157 (4th Cir. 1968).

The cause of action did not arise from sending the person to Virginia to make an inspection of the lumber. The accident had already occurred. Here there was no acting "as to a cause of action arising from the person's transacting any business in this State." Code of Virginia, 8–81.2.

■ PLIB's operations are conducted on the West Coast. It has made no contract in Virginia or elsewhere to be performed in Virginia, nor has it contracted to perform services in Virginia. It has made no contract to supply services or things in Virginia. The evidence does not bring this case within the provisions of Section 8–81.2(a) (2).

Under 8–81.2(a) (3), jurisdiction can only be obtained over one "causing tortious injury by an act or omission in this State." Applying the evidence before the Court, which is set out above, the causing of tortious injury "by an act or omission in this State" is not shown. If an act or omission occurred, it was at the inspection. The evidence does not even suggest that occurred in Virginia.

Sub-paragraph (a) (4) [8–81.2(a) (4)] provides for jurisdiction as to a cause of action arising from the person's "causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered, in this State." The occurrence of the injury in Virginia, and the occurrence of the act or omission out of Virginia does not complete the jurisdictional requirement. The person over whom jurisdiction is sought must be one who *regularly does or solicits business,* or engages in some other *persistent course of conduct,* or derives substantial revenues from *goods used or consumed* or *services rendered, in this*

*State.* It means substantial. Erlanger Mills v. Cohoes Fibre Mills, supra. As pointed out above, PLIB does not solicit any business in Virginia, it renders no services in Virginia, it engages in no persistent course of conduct in Virginia. There is no evidence it derives substantial revenues from goods used or consumed in Virginia. It would be pure speculation to say that it does.

█ Lastly, sub-section (a) (5) [8–81.2(a) (5)] provides for service on one "causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State." To come within the provisions of this sub-section there must be a breach of warranty "in the *sale of goods*;" secondly, it must be one who "*also* regularly does or solicits business, or engages in other *persistent* course of conduct, or derives substantial revenues from *goods* used or consumed or services rendered *in this State.*" PLIB does not manufacture or sell *goods*, and it does not *regularly* do or solicit business in Virginia, or engage in other *persistent* course of conduct, or derive substantial revenues from goods used or consumed or services rendered *in this State*. PLIB is not a manufacturer or seller. Except for the provisions of the statute, 8.2–318 of the Code of Virginia 1950, as amended [Uniform Commercial Code] lack of privity would defeat an action against one not a party to the contract of sale. However, that section of the Uniform Commercial Code provides that lack of privity between the plaintiff and defendant is not a defense in an action brought against the *"manufacturer or seller* of goods." Section 8.2–103 of said Code defines a seller as one "who sells or contracts to sell goods." Since sub-section (a) (5) of section 8–81.2 permits jurisdiction to be obtained in an action for "breach of warranty" only when the warranty is "made in the sale of goods," and it is clear PLIB does not sell "goods," Haynes cannot bring his action within the provisions of this sub-section.

The motion to quash the service of process will therefore be granted.

## MOTION OF CARR

Carr moves the Court to dismiss the action as to him on the grounds that plaintiff's exclusive remedy for injuries sustained, as to Carr, is under the Virginia Workmen's Compensation Act (Act).[1] It is stipulated that at the time of the accident, on October 25, 1965, Haynes was an employee of Childrey, and as such has received and continues to receive benefits under the Act.

Facts heretofore stated will not be repeated. Some additional facts may be pertinent. The trusses in question are fabricated from wooden timbers. They can be made by any reasonably capable carpenter. General contractors often construct them on the job-site. Childrey said his decision to construct them himself, with his carpenter labor, or have others construct them, is determined by how busy his own carpenters are, or the reasonableness of a sub-contractor's bid. His personnel is capable of constructing them and often does.

The Act, upon acceptance of its provisions, denies an injured employee the right to recover damages from another party if the other party is one "employed in the work" in which the employer of the injured person is engaged. Code of Virginia 1950, as amended, Section 65–20, 27, 37, 38, 39. Bristow v.

---

1. Title 65, Code of Virginia 1950, as amended. This Title was repealed and re-enacted in 1968, effective October 1, 1968, and is now Title 65.1. The provisions of the Act are substantially the same. Since the accident occurred in October 1965, the statute prior to amendment is to be applied as to this motion.

Safway Steel Products, 327 F.2d 608 (4th Cir. 1964). Under the Act an injured employee has no right of action against a sub-contractor of his employer or the sub-contractor's offending servant. See Code 65–37. Western Contracting Corp. v. Power Engineering Co., 369 F.2d 933, 935 (4th Cir. 1966).

 Carr contends that it and its employees were engaged in the work undertaken by Childrey and that Carr's employees were, therefore, for the purposes of the Act, employees of Childrey. Virginia Code 65–27, etc. On the other hand, Haynes says Carr was a mere supplier of materials. "If [Carr] was engaged in work which was a part of the undertaking of the * * * general contractor [Childrey], regardless of his relationship to the injured workman [Haynes] * * * the [Act] operate[s] to place the economic loss upon the project and to limit the workman's recovery to that specified in the Act." Turnage v. Northern Virginia Steel Corp., 336 F.2d 837, 841 (4th Cir. 1964). But, where an injury is caused by the negligence of one not engaged in the overall undertaking, that is, a stranger to the business, the injured party is not limited to recovery under the Act and may bring action against the stranger. Under the Act the rights and remedies granted "shall exclude all other rights or remedies of the employee to recover for injuries incurred during the course of his employment." Bosher v. Jamerson, 207 Va. 539, 151 S.E.2d 375, 376 (1966). An employee may maintain an action at law against the person who caused the injury if he is an "other party" within the meaning of the Act. Bosher v. Jamerson, supra. Even though Carr may have been an independent contractor, if Carr performed work on behalf of Childrey, then Carr was not an "other party." Bosher v. Jamerson, supra [151 S.E.2d 377], and Haynes' right to recover is limited to the Act. Floyd, Administratrix v. Mitchell, 203 Va. 269, 274, 123 S.E.2d 369, 372 (1962).

 Here, Carr was awarded a subcontract to construct wood trusses for Childrey. He was to assemble them at the site, and place them where directed by Childrey. The work was actually carpenter work, and could have been done by Childrey. He did not do it because his carpenters were busy with other work. It required no special skill. It was part of the trade business and occupation of Childrey. Hence, neither Carr nor Haynes was an "other party" within the meaning of the Act. Carr was obligated to construct the trusses and place them where directed by Childrey.

The case at bar falls within the principles (and facts) of Floyd, Administratrix v. Mitchell, 203 Va. 269, 123 S.E.2d 369, and Bosher v. Jamerson, supra. As said in Floyd, Administratrix v. Mitchell, supra, "The test is not whether the owner [contractor], by engaging an independent contractor to perform some part of his business, thereby engages in the business of the independent contractor. It is whether the independent contractor is performing work that is part of the trade, business or occupation of the owner." If he is, he comes within the Act. In Anderson v. Thorington Construction Company, 201 Va. 266, 110 S.E.2d 396, 399, the court said, "[I]t clearly appears to be the purpose of section 20(a) [now §§ 65–26 to 65–31] to bring within the operation of the Compensation Act *all persons engaged in any work* that is a part of the trade, business or occupation of the original party who undertakes as owner, or contractor to perform that work."—But when "an employe reaches an employer in the ascending scale, of whose trade, business or occupation the work being performed by the emyploye is not a part, then that employer is not liable to that employe" under the Act, and then "the employe's right of action at common law is preserved." This principle was affirmed in Rea v. Ford, 198 Va. 712, 96 S.E.2d 92, where the Court held the personal representative of an employee of a principal contractor could not maintain an action for wrongful death against a sub-contractor because such

contractors were not strangers to the employment and the work, and were under the canopy of the Act.

In Rea v. Ford, supra, Daniel, a general contractor, in the erection of steel trusses, rented from Ford a crane and crew to place the trusses. In the work Rea, an employee of Daniel, was killed. In an action by Rea's administratrix against Ford, the Court held Ford was not an "other party" within the meaning of the Act. There, the Court quoted with approval from Doane v. E. I. DuPont de Nemours & Co., 209 F.2d 921, 924 (4th Cir.) In that case The Texas Company employed Du Pont to remove certain sediment and sludge from a tank of Texas. Employees of Texas brought action against Du Pont to recover injuries. The Court held that nothing in the Act indicated a workman "has a common law right of action against any contractor or workman below him in the descending line." There the Court said "the cleaning of the tank was an operation performed in the course of the business of Texas, and hence under the law of Virginia, the plaintiffs have no cause of action against Du Pont." [209 F.2d 923].

In Floyd, Administratrix v. Mitchell, 203 Va. 269, 123 S.E.2d 369 (1962), Floyd, an employee of Glamorgan Pipe and Foundry Company, was struck and killed by a tractor-trailer owned by Powell and operated by Mitchell, Powell's employee. Glamorgan is a manufacturer of pipe. Floyd was foreman in the shipping yard and supervised the loading of pipe. Glamorgan contracted with Powell, a contract carrier by motor vehicle, to transport pipe to its customers. Pipe was loaded on the truck trailers by Glamorgan's cranes. While preparing to load the truck trailer, Mitchell, in backing it, struck and killed Floyd. Floyd was limited to his rights under the Workmen's Compensation Act. Glamorgan's business was manufacturing pipe. "Transporting the pipe to customers was a necessary element of this business. The loading of the pipe on the vehicles * * * was an essential part of this element of the business. * * * Glamorgan contracted with Powell to transport the pipe to * * * customers, a part of Glamorgan's business which Glamorgan could have done with its own employees and its own equipment had it determined that to be a better way." The "fact that it engaged Powell, an independent contractor, to transport the pipe did not make Powell and Mitchell, his employee, strangers to Glamorgan's business." The test is "whether the independent contractor is performing work that is part of the trade, business or occupation of the owner." [123 S.E.2d 372].

In the case at bar, Carr was performing work which was a part of the trade, business and occupation of Childrey. Carr was doing work Childrey could have done with its own employees and with its own equipment and men had it determined that to be a better way.

See also Anderson v. Thorington Construction, 201 Va. 266, 110 S.E.2d 396; Williams v. E. T. Gresham Company, 201 Va. 457, 111 S.E.2d 498; Beall, Admx. v. Standard Electric Co., 404 F.2d 881, E.D.Va., Judge Lewis, November 28, 1967, affirmed; Case No. 12,202, December 26, 1968 (4th Cir.) The last cited case was one to recover for wrongful death because of "injuries received by an employee of a sub-contractor against an alleged third-party wrongdoer, an independent contractor performing services on the same building project." The trial court entered summary judgment holding plaintiff's remedy was limited under the Virginia Workmen's Compensation Act. The holding was affirmed in a per curiam opinion.

Carr being an independent contractor engaged in performing services which were a part of Childrey's business and occupation, the motion is sustained.