## MILLER AND RHOADS

v.

### Steven WEST et al.

### Civ. A. No. 77–0420–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 2, 1977.

James E. Farnham, Jack E. McClard and Dale A. Oesterle, Hunton & Williams, Richmond, Va., for plaintiff.

Robert A. Pustilnik, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

This matter is before the Court on defendants' motion of 3 October 1977 to dismiss the Second Amended Complaint in the above styled action. Defendants' motion to dismiss is based upon: (1) lack of jurisdiction over the person of the defendants; (2) improper venue; (3) ineffective service of process; (4) unconstitutional service of process; and (5) the complaint fails to state a claim upon which relief may be granted. The plaintiff has filed its responsive brief and the time within which the Local Rules allow the defendants to file their rebuttal brief has elapsed. Accordingly, the matter is now ripe for disposition.

It appears from the pleadings and affidavits that there is diversity of citizenship and that venue is proper. Process was properly issued by this Court and the statute under which plaintiff is proceeding, Va.Code § 13.1–119 (Repl. Vol. 1973),[1] is not seriously challenged.

Plaintiff alleges in its complaint that Toy Management Corporation of America, Inc., (hereinafter TMCA), a foreign corporation, was "transacting business" in Virginia within the ambit of Va.Code § 13.1–102 (Repl. Vol. 1973)[2] and hence its officers and directors may be jointly and severally liable pursuant to Section 13.1–119.

The facts as alleged in plaintiff's complaint bearing on this point are as follows: The plaintiff and TMCA entered into a written contract dated 31 July 1975 in which TMCA agreed to supply all merchandise for, and manage the sales operation in the toy sections of plaintiff's department stores in various Virginia cities during the period of 1 September 1975 through 29 January 1977. The contract was negotiated and signed on behalf of TMCA by defendant West, who was acting in his capacity as Chairman of the Board of Directors of TMCA. Additionally, defendant Lang, who was President of TMCA, and defendant Freshman, who was Treasurer and Controller of TMCA, both participated in the execution of said contract. TMCA, through its agents and employees, participated in the

1. Va.Code § 13.1–119 (Repl. Vol. 1973) provides in pertinent part as follows:

If a foreign corporation transacts business in this State without a certificate of authority, its directors, officers and agents doing such business shall be jointly and severally liable for any contracts made or to be performed in this State and any torts committed in this State between the time when it began to transact business in this State and the date when it obtains a certificate of authority.

2. Va.Code § 13.1–102 (Repl. Vol. 1973) provides in pertinent part as follows: "No foreign corporation shall transact business in this State until it shall have procured a certificate of authority so to do from the Commission."

supply and management of the toy operation at plaintiff's stores in Virginia from 1 September 1975 until 30 July 1976. On 30 July 1976 TMCA, in violation of the contract, terminated its participation in the supply and management of the toy operation at plaintiff's stores. At no time did TMCA procure a certificate of authority from the State Corporation Commission as mandated by Section 13.1–102. Consequently, as TMCA's actions constituted "transacting business" within the meaning of Section 13.1–102,[3] the responsible officers and directors may be held jointly and severally liable pursuant to Section 13.1–119.

The issue before the Court is twofold: First, how does a plaintiff obtain service of process when seeking personal liability pursuant to Section 13.1–119 against responsible officers or directors residing out of State? Secondly, once personal jurisdiction is conferred upon the Court, does Section 13.1–119 place any limitations upon which officers and directors may be held personally liable?

### I

Plaintiff argues that service of process may properly be obtained on the individual defendants via Va.Code § 8.01–328.1 (Acts 1977, c. 617), commonly referred to as the Virginia Long-Arm Statute. Specifically, plaintiff bases its argument on Section 8.01–328.1(A)(1) and (2) which reads as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . transacting any business in this State . . . [or] contracting to supply services or things in this State." Neither party has cited case authority construing the statute within the context of this application. After extensive research, including the use of the LEXIS

computer system, the Court is satisfied that no such case exists.

It is apparent to the Court, however, that if service of process is to be obtained in the factual situation presently before the Court it must be pursuant to the long-arm statute. Section 13.1–119 speaks to service of process but the reference is limited to service upon a foreign corporation transacting business within this State without a certificate of authority. Similarly, Va.Code § 8.01–301 (Acts 1977, c. 617) provides for service of process upon a foreign corporation authorized to transact business in this State. Neither addresses service of process upon individual § 13.1–119 defendants. Hence, an analysis of the long-arm statute is necessary.

Virginia's long-arm statute was enacted in 1964. Except for paragraph (5), it follows verbatim the Uniform Interstate and International Procedure Act,[4] which, in turn, borrowed from long-arm statutes in Illinois, New York and Wisconsin.[5] It is manifest that the purpose of Virginia's long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the Due Process Clause. *Carmichael v. Snyder*, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968). The Court notes that both the Fourth Circuit Court of Appeals and the Virginia Supreme Court have interpreted the long-arm statute as requiring only one transaction in Virginia to confer jurisdiction on its courts. *Ajax Realty Co. v. J. F. Zook, Inc.*, 493 F.2d 818, 821 (4th Cir. 1972); *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971).

Those portions of the long-arm statute that concern the Court in the instant case are, as hereinbefore stated, subsection (A)(1) which concerns "transacting any business in this State" and subsection (A)(2)

---

**3.** *See Continental Properties, Inc. v. Ullman Co.*, 436 F.Supp. 538 (E.D.Va.1977).

**4.** Approved by the Commissioners on Uniform State Laws and the American Bar Association in 1962. See 9 B.U.L.A., 1963 Pocket Part at 75; Smithers, "A Look at the Virginia 'Long Arm' Statute," Virginia Trial Lawyers Associa-

tion (6th Annual Seminar) 63, 66 (March 26, 1965).

**5.** See generally, Smithers, Virginia's "Long Arm" Statute: An Argument for Constitutionality of Jurisdiction over Nonresident Individuals, 51 Va.L.Rev. 712, 713 (1965).

which concerns "contracting to supply services or things in this State." Defendants argue that they do not fall within these provisions of the long-arm statute because they have never acted directly or by any agent as to a cause of action arising from the present transaction to do any business in the State of Virginia or to supply services or things in the State of Virginia. Defendants go on to state, however, that if they *were* involved in any manner, it was as officers and directors of a foreign corporation which *itself* acted in Virginia, and which, in its own right, could be, and has been, sued in the State of Virginia. This latter averment, the Court believes, goes to the heart of the matter.

As the language of the long-arm statute shows, "[a] court may exercise personal jurisdiction over a person, *who acts directly or by an agent . . . .*" (emphasis added). Va.Code § 8.01–328.1(A) (Acts 1977, c. 617).

The facts hereinbefore set out clearly indicate that, for purposes of the long-arm statute, TMCA was both transacting business in Virginia *and* contracting to provide services and things to Virginia. However, for the individual defendants to fall within subsection (A)(1) and (2) of the long-arm statute, it must be found that TMCA was, in addition to acting in its corporate capacity, acting on behalf of these defendants as their agents.

■ The Court is cognizant of the fact that a corporation has capacity to act as agent.[6] However, plaintiff neither alleges that TMCA was acting as agent for defendants nor does it cite authority for the proposition that a corporation is, *ipso facto*, an agent of its officers and directors. Such does not appear to be the law.

■ A search of the law pertaining to the relationship between a corporation and its directors reveals that the corporate directors are not agents of the corporation since they are the controllers rather than the controlled, but neither are they the master of the corporation's employees. Their position makes them *sui generis* in the hierarchy of legal conceptions. W. Seavey, Agency § 10(B) (1964).

■ Its officers, however, are on different footing. A corporation, since it is impersonal, cannot act at all except through persons representing it—the stockholders as a body and at a corporate meeting, the board of directors, and other officers and agents. A corporation, therefore, must have the power to appoint officers and agents and authorize them to act for it. Hence, it is a general principle that a corporation, subject to any express restrictions, may authorize an officer or other agent to do in its behalf and name any act which is within the powers expressly or impliedly conferred upon it by its charter. The ordinary rules governing the scope of an agent's authority apply to the officers of a corporation just as they do to the agents of a private individual. W. Fletcher, Cyclopedia of the Law of Private Corporations, § 437 (perm. ed. rev. repl. 1969).

■ There is no dispute in the instant case that defendants acted as agents of TMCA. However, as the plaintiff neither alleges nor provides evidence, by affidavit or otherwise, ·that TMCA was an agent of the defendants, either by express, incidental, or apparent power, the Court is unable to reach such a conclusion. In the absence of agency, the individual defendants are beyond the reach of the Virginia long-arm statute.

## II

■ The issue of service of process, however, may be moot. One ground in the defendants' motion is that the suit should be dismissed because the complaint fails to state a cause of action upon which a judgment may be based. Although defendants' argument in support thereof deals with constitutional claims that do not appear to be relevant and, in any event, are not appropriately briefed, the Court will nevertheless consider the ground.

6. Restatement (Second) of Agency § 21 (1957).

Plaintiff seeks to hold the defendants personally liable pursuant to Section 13.1–119.[7] Hence, the Court must look to the language therein for guidance.

Section 13.1–119 dates back to 1887 when it read as follows:

> The officers, agents, and employees of any such company, doing business in this State, without complying with the provisions of the preceding section, shall be personally liable to any resident of the State having a claim against such company, and, moreover, service of process upon either of said officers, agents, or employees, shall be deemed a sufficient service on the company. [Va.Code § 1105 (1887)].

On its face, the original law did not appear to place any restrictions upon which officers and directors could be held personally liable.[8] However, in 1906 the Virginia Supreme Court held that Section 1105 has no application to officers, agents and employees who are nonresidents of the State and who have never been present in the State engaged in carrying on the business of the company, but only includes such officers, agents and employees as are, or have been, in this State aiding in carrying on the prohibited business.

> While the language of the statute may be sufficiently comprehensive to embrace all officers, agents, and employees of such company, no matter where they reside, it is also, we think, under well-settled rules of interpretation, susceptible of the construction that it was only intended to include such officers, agents, and employees as are or have been in the State aiding in carrying on the prohibited business. [*Richmond Standard Steel Spike and Iron Co. v. Dininny*, 105 Va. 439, 53 S.E. 961 (1906)].

The Court notes that the only issue before the Court in *Richmond Standard Steel* was statutory construction of Section 1105 as the court had obtained *in rem* jurisdiction through attachment of the defendant's property located in Virginia. Hence, the absence of the long-arm statute at that time would have no bearing on the case.

The Court further notes that *Richmond Standard Steel* has not been cited by the Virginia Supreme Court to date for the proposition hereinabove stated and has only been cited once by that court for any proposition. The case has been cited by other sources for the above proposition,[9] however, and has been cited recently in a 1977 revised volume of a corporation treatise.[10]

Section 1105 has undergone little revision since 1887. Its successors are as follows: Va.Code § 3848 (1919),[11] Va.Code § 13–218 (1950),[12] and Va.Code 13.1–119 (Repl. Vol.

7. See note 1.

8. But see, Ranson, *Foreign Corporations Doing Business in Virginia, Virginia Code, Sections 1104–1105*, 7 Va.Law Reg. 305 (1902), wherein the penal nature of this statue is discussed.

9. Va.Code § 13–218 (1950) annotation; Annot., 51 A.L.R. 376, 389–90 (1927).

10. W. Fletcher, Cyclopedia of the Law of Private Corporations, § 8525 (perm. ed. rev. repl. 1977).

11. Va.Code § 3848 (1919) provides in pertinent part as follows:

> The officers, agents and employees of any such corporation doing business in this State without such certificate of authority shall be personally liable to the State for any fines imposed on it, and to any resident of the State having a claim against such corporation, and service of legal process upon any of said officers, agents or employees within this State shall be deemed sufficient service on the corporation.

12. Va.Code § 13–218 (1950) provides in pertinent part as follows:

> The officers, agents and employees of any such corporation doing business in this State without such certificate of authority, or when such corporation is in default under the provisions of this section or § 13–211 requiring the filing of a duly authenticated copy of any amendment or revision of its charter and the payment of the fee required by law, if any, or transacting, or taking any part in the transacting of, any business, or exercising, or taking any part in the exercise of, any corporate functions or franchises in contravention of any const'l or statutory provision, shall be personally liable to the State for any fines imposed on it, and to any resident of the State having a claim against such corporation.

1973). A careful reading of these statutes reveals, on their face, no substantive change regarding the personal liability of officers and directors. It goes without question that the Virginia General Assembly has been fully aware of *Richmond Standard Steel* for the past seventy odd years and surely would have amended the statute had they not been in agreement with the statutory interpretation as set forth in that case.

There is no allegation in the complaint or pleadings that any of the defendants ever resided within the State or actually came into the State to transact business. In the absence of such allegation it appears, based on the above reasoning, that defendants' motion to dismiss the suit for failure to state a cause of action upon which relief can be granted is good.

An appropriate order shall issue.