Kenneth A. DARDEN et al., Plaintiffs,

v.

HECK'S, INC., and Paul Tennant, Defendants.

BAKER & COOMBS, INC., Defendant and Third Party Plaintiff,

v.

BOONE & WALSH, INCORPORATED, Third Party Defendant.

Civ. A. No. 78–195(R).

United States District Court, W. D. Virginia, Roanoke Division.

Oct. 17, 1978.

---

Edwin C. Stone, Davis & Stone, Radford, Va., for plaintiffs.

S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant and third-party plaintiff Baker & Coombs, Inc.

Lewis Booker, Hunton & Williams, Richmond, Va., for defendant Tennant.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant Heck's, Inc.

Carr L. Kinder, Jr., Bird, Kinder & Huffman, Roanoke, Va., for third-party defendant Boone & Walsh, Inc.

## MEMORANDUM OPINION and ORDER

DALTON, District Judge.

Defendant Paul Tennant has moved to dismiss plaintiffs' complaint against him on two grounds, lack of jurisdiction over his person and failure to state a claim upon which relief can be granted. This case arises from the collapse during last winter's snow and ice storms of the roof of the Heck's Department Store just north of Radford, Virginia. Plaintiffs, owners of the land on which the store is located, brought this action in the Circuit Court of the City of Radford against the lessee of the property (Heck's, Inc.) and a contractor (Baker and Coombs, Inc.) and architect (Tennant) who were involved in the construction of the store building. Plaintiffs claim that the store's roof collapsed as a result of inadequate design and that the defendants are jointly and severally liable in the amount of $500,000 on the basis of breach of warranty and negligence. The action was removed to this court by defendant Baker and Coombs, Inc., on the basis of diversity of citizenship. All of the plaintiffs are citizens of Virginia and all the defendants are citizens of West Virginia.

Defendant Tennant has submitted an affidavit with his motion to dismiss, stating that he is not and has never been a resident of Virginia, that he has never been licensed or certified as an architect in Virginia, that he does not and has never maintained a mailing address, telephone number, office, agent or employee within Virginia, that he owns no real estate, banking accounts, warehouses, inventories or other property within Virginia, and that he has neither executed any contract nor transacted any business within Virginia. He also states that he is under contract with defendant Heck's, Inc., to provide certain limited architectural services, on a retainer basis, in connection with various Heck's stores in West Virginia and elsewhere, and that these services consist in part of review of proposed color codes, fixtures and appurtenances, parking plans, and requests for progress payments submitted to him at his office in Charleston, West Virginia. He concedes that he occasionally visits a project with officers of Heck's in order to better perform these services. Tennant also asserts that he did not undertake to serve as "architect for the building" at Radford, except to perform the services described above, and that he did not undertake to obtain building permits and licenses or to supervise construction of the building at Radford.

Plaintiff Kenneth A. Darden has submitted his own affidavit in response to the motion, stating that the plaintiffs met with Paul Tennant on the job site on numerous occasions (Tennant's counsel informs us

that Tennant visited on the Radford site four different times) and had numerous telephone conversations with him regarding architectural matters relating to the construction of the Radford building, that Tennant never at any time denied that he was the architect on the building and the plaintiffs at all times understood that Tennant was the architect and treated him as such. Darden also states that plaintiffs paid the sum of $5,000 for architectural fees and believe that these fees went to Paul Tennant, and that Tennant visited the site on several occasions after the collapse of the building and attempted to determine the cause thereof. Darden also submits photocopies of a number of pieces of correspondence between plaintiffs and defendants, including Tennant, concerning the Radford construction. Included in this group are three letters from either Paul Tennant or his associate Gregory C. Cummings to plaintiff George Burris approving certain payments on the project and four listings of items purchased for the construction which were approved by Tennant or Cummings. Another letter, signed by Paul W. Tennant and addressed to plaintiffs on March 7, 1974 states,

On March 6, 1974, an on-site inspection was made to observe the prepared site prior to actual building construction. As in accordance with the Specifications, Division 2 "Site Work", it will necessitate a letter guaranteeing compaction to 95% density as indicated therein for the above referenced project.

Upon receipt of the above requirements, this office will notify the General Contractor, Baker & Coombs, Inc., to proceed with foundations.

The claim of personal jurisdiction over Tennant is apparently premised upon service under Rule 4(e), F.R.C.P., and Virginia's long-arm statute, Code of Virginia, 1950, §§ 8.01–328 *et seq.*, as amended. The statute states in pertinent part,

§ *8.01–328.1.* *When personal jurisdiction over person may be exercised.*—
A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

1. Transacting any business in this State;

2. Contracting to supply services or things in this State;

3. Causing tortious injury by an act or omission in this State;

4. Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State;

5. Causing injury in this State to any person by breach of warranty expressly or impliedly made in the sale of goods outside this State when he might reasonably have expected such person to use, consume, or be affected by the goods in this State, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

6. Having an interest in, using, or possessing real property in this State;

7. Contracting to insure any person, property, or risk located within this State at the time of contracting; or

8. Having been ordered to pay spousal support or child support in a suit for divorce in this State in which a decree of divorce from the bond of matrimony or a decree of divorce from bed and board has been entered by a court of competent jurisdiction having in personam jurisdiction over such person.

B. When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; . . .

In addition, "due process" requires that Tennant have certain "minimum contacts" with the Commonwealth of Virginia, as elucidated in *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Shaffer v. Heitner,* 433 U.S. 186, 207, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). This means that maintenance of the suit against the out-of-state defendant must not offend traditional notions of fair play and substantial justice. *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971). *Carmichael v. Snyder,* 209 Va. 451, 164 S.E.2d 703 (1968). Such contacts are met only when there is some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefit and protections of its laws. *Marston v. Gant;* 351 F.Supp. 1122 (E.D.Va.1972). *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

 Section 8.01–328.1 is a "single act" statute, requiring only a single act of doing business by a person in the Commonwealth to confer jurisdiction over that person by the courts of this State. *John G. Kolbe, Inc. v. Chromodern Chair Co., supra,* 180 S.E.2d at 667. Likewise a single act committed within the Commonwealth resulting in tortious injury also confers jurisdiction upon the actor, although a single act committed outside the Commonwealth and resulting in tortious injury within is insufficient to confer jurisdiction unless the defendant has engaged in some persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered within Virginia. *St. Clair v. Righter,* 250 F.Supp. 148 (W.D.Va.1966). *Haynes v. James H. Carr, Inc.,* 307 F.Supp. 1228 (E.D.Va.1969), *aff'd,* 427 F.2d 700 (4th Cir.); cert. den., 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). The Constitution of Virginia, 1971, Art. VI, § 1, has conferred upon the General Assembly the power to determine the original and appellate jurisdiction of the courts of the Commonwealth, and where the jurisdiction conferred upon the courts by statute does not go to the limits of due process, the courts of the Commonwealth may not go further and as-

sert jurisdiction over persons not embraced within that legislation. *Beaty v. M.S. Steel Company,* 401 F.2d 157 (4th Cir. 1968). Where, as here, the District Court has jurisdiction upon a case's removal from the state courts under 28 U.S.C. § 1441, that jurisdiction is derivative and is no greater than that possessed initially by the state court. *Freeman v. Bee Mach. Co.,* 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943).

On the other hand, the Virginia Supreme Court has stated, in cases involving subsection A.1 and A.6 of § 8.01–328.1, that the purpose of Virginia's long-arm statute is to assert jurisdiction over non-resident defendants to the extent permissible under the Due Process Clause, especially when those nonresidents engage in some purposeful activity in this State or have inflicted injuries upon, or have incurred obligations to, those entitled to legitimate protection. *John G. Kolbe, Inc. v. Chromodern Chair Co., supra,* 180 S.E.2d at 667. *Carmichael v. Snyder, supra,* 164 S.E.2d at 707. And whereas the Court of Appeals for the Fourth Circuit has held that a defendant's "single act" of introducing defective goods into Virginia is insufficient to confer jurisdiction under any of the provisions of the Virginia long-arm statute, *Haynes v. James H. Carr, Inc.,* 427 F.2d 700 (4th Cir. 1970), cert. den., 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970), that holding has been overruled in light of *John G. Kolbe, Inc.,* at least with respect to subsection A.1, the "transacting business" portion of § 8.01–328.1. *Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818 (4th Cir. 1972).

 Therefore, while these precedents are confusing and sometimes contradictory, they may be read together as stating a rule that except where the General Assembly has placed explicit affirmative limitations on the extent of long-arm jurisdiction in Virginia, as it has in subsections A.4 and A.5 of § 8.01–328.1,[1] the courts of Virginia, including the United States District Courts sitting in diversity cases, may take personal jurisdiction over out-of-state defendants under each of the subsections of § 8.01–

1. For a valuable analysis of the requirements of subsection A.4 of § 8.01–238.1 (then § 8–81.-2(a)(4)) see Judge Clarke's opinion in *Willis v.*

*Semmes, Bowen and Semmes,* 441 F.Supp. 1235, 1240–1244 (E.D.Va.1977).

328.1 to the extent allowed by the due process clause of the fourteenth amendment. It may also be said that a single act of a defendant, committed inside the Commonwealth either personally or through an agent, will be sufficient to invoke the jurisdiction of the courts of the Commonwealth over that defendant with respect to any cause of action arising from that act. *Miller & Rhoads v. West,* 442 F.Supp. 341 (E.D. Va.1977). An event does not meet this "single act" test and thereby confer jurisdiction, however, if it can only technically be said to have transpired in Virginia. *Danville Plywood Corp. v. Plain & Fancy Kitchens,* 218 Va. 533, 238 S.E.2d 800 (1977). It meets this test if and only if it satisfies the requirements of due process, that by this act defendant has shown a purpose of conducting activities in this State to an extent that it would be fair and just to require him to submit to the jurisdiction of its courts.

■ On the basis of this standard, the Court concludes that Tennant's acknowledged trips to the site of the Radford construction were sufficient to confer jurisdiction over him in this case. Tennant's affidavit alone shows that he provided services in the construction of Heck's Department Store outside Radford and that he visited the Radford site in the course of performing those services. Plaintiffs allege that Tennant breached an implied warranty to them "by designing and allowing the builder to construct a roof on the building which did not have adequate support structure for the roof to prevent collapse under the weight of ice and snow which the defendant Tennant knew or should have known would accumulate upon the roof." Likewise, plaintiffs allege Tennant was negligent in substantially the same respect. Supposing that plaintiffs might prove either of their claims, we find it immaterial whether Tennant's negligent act or act in breach of warranty might eventually be pinpointed at the Radford site or in his office in West Virginia. All of these services taken together are the acts from which plaintiffs' alleged causes of action arose, and this court has proper jurisdiction over Tennant with respect to each alleged cause of action on the basis of that portion of his services performed personally at the construction site. Code of Virginia, 1950, § 8.01–328.1.A. 1, 2 & 3, & § 8.01–328.1.B.[2]

The cases to which Tennant appeals do not provide him support. In *Danville Plywood Corp., supra,* defendant, a Pennsylvania corporation was solicited by plaintiff's representative in that state to sell plaintiff plywood panels. After the sale was agreed to, defendant was instructed to ship the panels to plaintiff in Virginia. Defendant's only contact with Virginia was its technical "possession" of the goods in the hands of the shipper, since the panels were shipped F.O.B. Danville and the risk of loss did not pass from the seller until possession was passed in Danville. Code of Virginia, 1950, § 8.2–319(1)(a). This fortuity did not display any purpose on the defendant's part to avail itself of the privilege of conducting activities in Virginia. In *Marston v. Gant,* 351 F.Supp. 1122 (E.D.Va.1972), defendant was a Japanese corporation which not only had no dealings with parties in Virginia, but had not even made a shipment to Virginia. Instead it sold goods, the subject of a patent infringement suit, to exporters in Japan, who in turn sold these goods to American distributors. *Mississippi Chemical Corp. v. Vulcan-Cincinnati, Inc.,* 224 F.Supp. 11 (S.D.Miss.1963), aff'd 338 F.2d 662 (5th Cir. 1964), while factually similar to the present case, involved a Mississippi long-arm statute which required more than a single act in the State to provide jurisdiction over an out-of-state defendant, indeed it was interpreted as requiring "some substantial amount of business activity engaged in with some continuity and regularity." 224 F.Supp. at 12. Therefore, defendant Tennant's motion to dismiss for lack of personal jurisdiction is denied.

■ Tennant also moves for dismissal on the ground that plaintiffs have failed

---

**2.** Because this court finds an adequate basis for jurisdiction under subsections A.1, 2 and 3 of § 8.01–328.1, in that defendant transacted business in this State, contracted to perform services in Virginia, and committed acts here alleged to have caused tortious injury, it need not deal with more difficult problems posed by subsection A.4. See *infra,* n.1.

to state a claim upon which relief can be granted. He argues that from the facts alleged and attested to in the submitted affidavits it is clear as a matter of law that he owed no duty to plaintiffs, either in warranty or tort, upon which a claim could be based. Dismissal for failure to state a claim is not proper unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Based on the complaint and the affidavits filed, the court at this stage of the proceedings cannot say that plaintiffs will not be able to prove any set of facts that would entitle them to relief. Defendant Tennant's motion to dismiss for failure to state a claim is denied at this time. He may, however, renew his contention that plaintiffs have failed to state a cause of action later in the course of these proceedings as the evidence develops. *Marshall v. Spangler,* 397 F.Supp. 200 (W.D.Va.1975).[3]

---

**3.** *Valley Landscape Co., Inc. v. Rolland,* 218 Va. 257, 237 S.E.2d 120 (1977), in which a contractor was not allowed to sue as a third party beneficiary on a contract between owner and architect is not dispositive of the case here, where owners seek relief against an architect employed by their contractor. Tennant's assertion that he owed no duty in tort to plaintiffs is unsupported by authority and seems particularly weak. See *Willner v. Woodward,* 201 Va. 104, 109 S.E.2d 132 (1959). See also *Gravely v. Providence Partnership,* 549 F.2d 958 (4th Cir. 1977).