**Joshua VIERS et al., Plaintiffs,**

v.

**Paul MOUNTS et al., Defendants.**

**Civ. A. No. 78–0168–B.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

Feb. 6, 1979.

188

J. D. Morefield, Browning, Morefield, Schelin, Cody & Arrington, P. C., Abingdon, Va., for plaintiffs.

Herman W. Lester, Combs & Lester, P.S.C., Pikeville, Ky., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs Joshua and Jerry Viers, doing business as J & J Contractors, instituted this breach of contract action on August 30, 1978, pursuant to Title 28 U.S.C. § 1332(a)(1) (Supp.1978), diversity of citizenship. Plaintiffs are citizens of the Commonwealth of Virginia and defendants Paul and Vivian Mounts are citizens of the State of Kentucky. Plaintiffs claim an amount in controversy in excess of $10,000 and accordingly subject matter jurisdiction is perfected under Section 1332.

Personal jurisdiction over the nonresident defendants is asserted under the Virginia long arm statute, Va.Code Ann. § 8.01–328.-1.A.1. (Repl. Vol. 1977), with process served pursuant to Rule 4(e), Fed.R.Civ.P., and Va.Code Ann. § 8.01–329. (Repl. Vol. 1977), providing for substituted service on the Secretary of the Commonwealth of Virginia as statutory agent for the nonresident defendants.

In a special appearance in this court, defendants entered objections to the sufficiency of service of process[1] and the assertion of personal jurisdiction over them, and moved the court to dismiss the action or quash service of process. Fed.R.Civ.P. 12(b)(2) & (5). Plaintiffs opposed the motions. On December 20, 1978, the court conducted a hearing on defendants' motions, at which time the parties offered evidence supporting their respective positions on the jurisdictional issue. The parties' versions of the facts giving rise to this action, as revealed in the hearing, are conflicting and contradictory, and can be summarized at best as follows:

During the summer of 1977, plaintiffs (Viers) and defendants (Mounts) entered into contract negotiations for the construction of a home in Kentucky for Mr. and Mrs. Mounts. The Mounts apparently initiated the negotiations by a telephone call from their home in Phelps, Kentucky, to the Viers in Davenport, Virginia. Later, while in Kentucky on other business, the Viers stopped at the Mounts' restaurant in Phelps, and the parties discussed the type of home the Mounts desired to have constructed. At this meeting the Mounts provided brochures and pictures of homes they thought might interest them, but no agreement between the parties was reached.

Desiring to observe the quality of the Viers' work, the Mounts next visited one of the Viers' job sites at Poplar Creek, Virginia. During this visit the defendants examined and inspected the Viers' work at the site, obviously to determine whether the quality of the Viers' work was suitable to them.

After their examination of the Viers' work, the Mounts again contacted the plain-

---

1. Defendants do not contest the adequacy of the notice they received, only the basis for its issuance.

tiffs by telephone, and on the suggestion of Joshua Viers, the parties agreed to meet at the Dixie Drive-In in Grundy, Virginia, for further discussion.

The meeting at the Dixie Drive-In took place as arranged; however, the parties disagree as to what there transpired. Plaintiffs state that the parties made an oral contract which was later formalized in Kentucky by the execution of a written instrument embodying the identical terms of the oral agreement. Defendants take the position that the parties did not reach an agreement at the Dixie Drive-In, but that additional negotiations took place which finally led to the execution of a written contract in Kentucky.

In support of their position, plaintiffs testified that the Mounts arrived at the Dixie Drive-In with a picture and the floor plan of the house they desired. The Mounts wanted to know if the plaintiffs could construct the house in Kentucky with several changes and if the plaintiffs would furnish all material and labor necessary to do so. The Mounts indicated the changes they desired in the plan, and the plaintiffs then allegedly made a $30,000 offer to construct the house with the Mounts providing the material and the plaintiffs furnishing labor only. Plaintiffs aver that the Mounts accepted this offer and that the terms were later reduced to writing and read to the Mounts over the telephone prior to the actual execution of the contract. Plaintiffs state that during this telephone conversation the Mounts again agreed to the terms. Later, the plaintiffs took the written instrument to Phelps, Kentucky, where all the parties executed the contract and the Mounts gave plaintiffs a down payment of $10,000. Plaintiffs allege that no terms outside of the instrument itself were discussed at Phelps except for provisions relating to the connection of their camper to utility outlets at the work location.

Defendants, on the other hand, state that no agreement was reached at the Dixie Drive-In. They allege that the Viers could not state a price without studying the plans, and that they took the plans home, studied them and then contacted the defendants. Defendants offered testimony to the effect that Jerry Viers contacted them by telephone and offered a price of $32,000, which the Mounts refused. Another call produced an offer of $30,000, which amount the written contract subsequently embodied.

The Mounts argue that the sole agreement between the parties is the contract executed at Phelps, Kentucky, in the Mounts' restaurant, subsequent to the Grundy meeting. Defendants further allege that final negotiations, including the discussion of previously unmentioned terms, execution and the exchange of a $10,000 down payment all transpired at this meeting, and they offered corroborating testimony in support of these contentions.

Whether it was merely a reaffirmation of an earlier oral contract, as plaintiffs argue, or the original agreement itself, as defendants submit, a written contract between the parties was executed at Phelps, Kentucky, on September 22, 1977, for the construction of a home for the Mounts.

Construction of the house in Kentucky progressed until such time as the contract was allegedly breached. At the time of the breach, the Mounts had paid $20,000 of the $30,000 due on the labor contract. An extra $3,000 for construction work outside the actual terms of the contract had also been paid, and plaintiffs allege that an extra $3,000 is owed for still more additional work. The contract apparently contained a provision for the payment of additional fees for extra work not contemplated by the terms of the contract itself. Thus, in aggregating their claims, plaintiffs allege that $13,000 is owed to them.

After the breach, plaintiffs instituted this action, attempting to bring defendants within the jurisdiction of this court pursuant to the Virginia long arm statute. The issue before the court is the scope of that statute: (1) whether asserting in personam jurisdiction over the defendants is contemplated by the statute, and (2) if so, whether to assert jurisdiction would violate the due

process clause of the Fourteenth Amendment.

The statute states in pertinent part:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's

1. Transacting any business in this State;

* * *

B. When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him; . . . . .

Va.Code Ann. § 8.01–328.1. (Repl.Vol.1977).

The "transacting business" subsection of the long arm statute is a repudiation of the "doing business" rationale for the assertion of in personam jurisdiction over nonresident defendants. *See Ajax Realty Corp. v. J. F. Zook, Inc.,* 493 F.2d 818 (4th Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2148, 36 L.Ed.2d 687 (1973). As such, the statute contemplates the extension of personal jurisdiction to encompass all nonresidents who transact any business within the State so long as the cause of action asserted arises from the nonresident's transaction of business. One act of transacting business will suffice. *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971).

In construing the "transacting business" subsection in such a fashion, the Supreme Court of Virginia reasoned that "the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." *John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. at 740, 180 S.E.2d at 667. *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 238 S.E.2d 800 (1977).

▮ It is evident, therefore, that a single act committed in Virginia by a nonresident is sufficient to invoke the protection of the jurisdictional statute with respect to any cause of action arising therefrom if by that one act the nonresident can be said to have engaged in some purposeful activity in Virginia. The purposeful activity limitation thus embraces the due process constitutional requirements mandated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958): the nonresident must have certain "minimum contacts" with the forum which evince his "[purposeful availment] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240; *International Shoe Co. v. Washington, supra.*

Since asserting in personam jurisdiction under the "transacting business" subsection is limited by the parameters of the due process clause, *John G. Kolbe, Inc. v. Chromodern Chair Co., supra,* the inquiries concerning (1) the reach of the statutory authority for the assertion of in personam jurisdiction over these nonresidents and (2) the limits due process places on such an assertion of jurisdiction merge and become identical. *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176 (6th Cir. 1975). Thus, the "single act" rule of the long arm statute is applicable only when the assertion of jurisdiction thereunder comports with due process.

The "single act" upon which plaintiffs bring this claim under the "transacting business" provision of the long arm statute is the meeting between the parties at the Dixie Drive-In where they allegedly entered into an oral contract. Defendants challenge this contention, stating that they made no contract in Virginia, and furthermore, that their activities in Virginia do not amount to "transacting business" within the meaning of the statute. Plaintiffs do not contest the facts that the written contract was executed, performed and breached in Kentucky.

▮ The court is satisfied that the assertion of in personam jurisdiction by the courts of Virginia over a nonresident defendant for causes of action arising from the consummation of a contract in Virginia between the nonresident and a Virginia citi-

zen is contemplated by the "transacting business" subsection of the Virginia long arm statute, *Darden v. Heck's, Inc.,* 459 F.Supp. 727 (W.D.Va.1978); *Carmichael v. Snyder,* 209 Va. 451, 164 S.E.2d 703 (1968), and is also constitutionally sound. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

On the other hand, mere contract negotiations carried out in Virginia between a state citizen and a nonresident, with execution and performance of the contract in a foreign forum, would not appear to provide the nexus with Virginia necessary for in personam jurisdiction to be asserted under the "transacting business" subsection for a cause of action arising from that contract's breach, since in such a situation the nonresident doubtfully would have been in a position "[to] purposefully avail [himself] of the privilege of conducting activities within [Virginia], thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240.

In the instant case, the court finds the activity of the defendants in the State of Virginia, including their initial visit as well as the Dixie Drive-In meeting, to be in the nature of preliminary negotiations that eventually led to the execution of the written contract in the State of Kentucky. Since the parties did in fact put their agreement in writing, and also since the contract sued upon in this action is the written contract made in Kentucky, the court is persuaded that the parties contemplated a written instrument as the only agreement between them, not intending to be bound until a written document existed.[2]

Although the identical terms which were later embodied in the written contract may very well have been discussed at the Dixie Drive-In meeting, the events of that meeting can only be denominated negotiations, albeit essential negotiations, preceding the actual execution of the contract at Phelps, Kentucky.

This one contact—negotiation of the essential terms of the subsequent contract—is insufficient under the due process clause to satisfy the minimum contacts standard necessary to support such an assertion of in personam jurisdiction over these nonresidents.

The activities of the Mounts in Virginia fall far short of the "purposeful availment" requirement of *Hanson v. Denckla*: by entering into preliminary contract negotiations in Virginia, the Mounts neither invoked the "benefits and protections" of the forum's laws, nor submitted to the jurisdiction of its courts.

The court realizes, of course, that the plaintiffs' interest in pursuing this claim within the forum state, and the forum state's interest in protecting the rights of her citizens, are both to be considered. *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In the instant case, however, the "quality and nature" of the defendants' activities in Virginia are not such that it is "reasonable" and "fair" to require them to conduct their defense in that State. *Kulko v. Superior Court,* 436 U.S. at 92, 98 S.Ct. 1690; *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

The contract upon which this suit is brought was executed in Kentucky; performance of the contract took place in Kentucky;[3] the contract was allegedly breached in Kentucky; and the work performed under the contract is located in Kentucky. And, while the court's primary inquiry is focused not upon the quantity of contacts with the defendants' State, but upon the

**2.** In *Harris v. Citizens Bank & Trust Co.,* 172 Va. 111, 200 S.E. 652 (1939), the Virginia Supreme Court stated: "If it be understood that [an agreement's] terms are to be reduced to writing as an ultimate expression of conclusions reached in a series of negotiations, then a writing is necessary." 172 Va. at 143, 200 S.E. at 665.

**3.** To satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332, plaintiffs have aggregated their claims against defendants. $10,000 is allegedly still due under the terms of the contract itself and $3,000 is allegedly owed plaintiffs for work completed outside the actual terms of the contract. Thus, in reaching the jurisdictional amount, plaintiffs rely in part on an alleged debt arising solely from their activi-

quality of the defendants' contact with the forum state, the preceding facts, viewed together with the defendants' "fleeting contact" with Virginia, persuade the court that "traditional notions of fair play and substantial justice" require dismissal of this action for lack of in personam jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. 95 (1945); *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

An appropriate Order shall issue granting defendants' motion to quash service of process and dismiss this action.

ties within the State of Kentucky, although the contract allowed for the expenses of subsequent additional work, as well as the debt owed by virtue of the express terms of the contract itself.