**Bill G. HUMPHREYS, Plaintiff,**

v.

**J. R. PIERCE, Jr., Defendant.**

**Civ. A. No. 79–0151–B.**

United States District Court,
W. D. Virginia.

May 6, 1981.

Carl E. McAfee, Norton, Va., for plaintiff.

Robert T. Winston, Norton, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Plaintiff, Bill G. Humphreys, a resident of Gate City, Virginia, brings this action for deceit against J. R. Pierce, Jr., a resident of Kingsport, Tennessee. Jurisdiction is predicated upon diversity of citizenship and more than $10,000.00 in controversy exclusive of interest and costs. Title 28 U.S.C. § 1332. The question presented is whether a nonresident defendant who has made a material misrepresentation in Virginia causing a resident plaintiff to sustain economic injury can be compelled to defend an action for deceit here.

### I.

It appears from a September 1, 1979, deposition of the parties that sometime in 1978 defendant came to Virginia for the

purpose of finding someone to do some grading work on his mother's property located in Sullivan County, Tennessee, in exchange for an interest in the property. While in Virginia, he was given the name of the plaintiff as a prospect, and he visited the plaintiff's home in Gate City, Virginia. Plaintiff was not at home and defendant left a map on which he wrote, in part, as follows:

"Mr. Humphreys, I own about 200 acres. My plans are to return to Wyoming. I just wondered if you would be interested in leasing or buying any of this.

I wish you would call me . . . ."

Defendant identified the property on the map and left his name and Tennessee telephone number. Finding the note later that evening, plaintiff contacted defendant and expressed an interest in discussing the matter further. Plaintiff met defendant in Tennessee where all additional negotiations took place, and at no time did the defendant return to the State of Virginia for any purpose related to the transaction. An agreement was allegedly reached which, in part, called for plaintiff to perform some grading work. Plaintiff allegedly purchased some heavy equipment necessary for the work and began the grading process. A disagreement arose concerning the nature of performance contemplated, and the plaintiff learned that defendant's mother, and not defendant, was in fact the owner of the property. Plaintiff commenced this action for deceit in the U.S. District Court for the Western District of Virginia for economic injury he allegedly incurred as a result of plaintiff's misrepresentation concerning ownership of the property. Jurisdiction over defendant is asserted pursuant to Va.Code Ann. § 8.01–328.1, A, 3, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by agent, as to a cause of action arising from the person's [c]ausing tortious injury by an act or omission in this State." Defendant has moved to dismiss for want of personal jurisdiction. Finding the exercise of jurisdiction within the contemplation of the Virginia long-arm statute and consonant with notions of fair play and substan-

tial justice and not injurious to principles of state sovereignty, defendant's motion will be denied.

## II. The Court's Two-Step Inquiry

■ Rule 4 of the Federal Rules of Civil Procedure provides the manner in which process is to be served upon various classes of defendants. As an alternative, it also provides for service in any manner which is prescribed by the law of the forum state. When jurisdiction is sought pursuant to the Virginia long-arm statute, a two step inquiry is required: first, it must be determined whether the statutory language permits service of process on the non-resident defendant; and second, it must be determined whether the exercise of personal jurisdiction under the statute is consonant with the due process clause of the United States Constitution. *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 703 (4th Cir. 1970). *See Viers v. Mounts*, 466 F.Supp. 187, 189–190 (W.D.Va.1979). These two steps are interrelated, however, as the Virginia long-arm statute is a "deliberate and conscious effort on the part of the General Assembly of Virginia to assert jurisdiction over non-resident defendants to the extent permissible by the due process clause." *Carmichael v. Snyder*, 209 Va. 451, 456, 164 S.E.2d 703, 707 (1968).

### A. The Statutory Requirements

■ As to the first inquiry, it is apparent that defendant's conduct falls within the language of Va.Code Ann. § 8.01–328.1,A,3. That is, plaintiff's misrepresentation claims sufficiently allege the common law action of deceit, *Mears v. Accomack Banking Co.*, 160 Va. 311, 168 S.E. 740 (1933); Green, *Deceit*, 16 Va.L.Rev. 749 (1930); *Restatement (Second) of Torts* § 525, and that action arises out of defendant's misrepresentation in Virginia, resulting in tortious injury here. Accordingly, the court finds that the language of Va.Code Ann. § 8.01–328.1,A,3 permits service of process on the defendant.

### B.   The Dictates of Due Process

■ Due process considerations operate as a limitation on the jurisdiction of a court to enter a judgment affecting rights or interests of a non-resident defendant. *Kulko v. Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). The validity of a judgment imposing a personal obligation requires jurisdiction over the person of the defendant. *Pennoyer v. Neff,* 95 U.S. 714, 732–733, 24 L.Ed. 565 (1878); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Kulko v. Superior Court, supra,* 436 U.S. at 91, 98 S.Ct. at 1696. Such jurisdiction requires reasonable notice that an action has been brought, *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313–314, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950), as well as "a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum." *Milliken v. Meyer,* 311 U.S. 457, 463–464, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940); *Kulko v. Superior Court, supra,* 436 U.S. at 91, 98 S.Ct. at 1696. The constitutional standard by which the exercise of jurisdiction is to be measured is whether the defendant has "certain minimum contact with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158; *Kulko v. Superior Court, supra* at 91, 98 S.Ct. at 1696, and is consistent with principles of "interstate federalism." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980).

While *International Shoe* established a minimum contacts rule it left undefined the contours of the requisite forum-related activity that would subject the nonresident to service of process. In *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), forum-related activity was broadly defined so as to encompass those matters having a "substantial connection" with a forum state, thus factoring in the forum state's "interest in providing effective means of redress for its residents . . . ." *Id.* at 223, 78 S.Ct. at 201. However, retreating from this broad definition of forum-related activity, the Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), made it clear that the relationship necessary to satisfy the minimum contacts requirement of *International Shoe* must be between the defendant and the forum state. The court, in *Hanson,* demanded that defendant's conduct evidence that he has purposely availed himself of the privilege of conducting activities within the forum state before subjecting him to its jurisdiction. As the court explained:

> The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with a forum State. The application of that rule would vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.

357 U.S. at 253, 78 S.Ct. at 1239. In *Kulko v. Superior Court, supra,* "[t]he Supreme Court recently reaffirmed the importance of the 'purposely availing' language of *Hanson v. Denckla.*" Wright & Miller, *Federal Practice and Procedure,* § 1067 (Supp.1981); n., *The Long-Arm Reach of the Courts Under the Effect Test After Kulko v. Superior Court,* 65 Va.L.Rev. 175 (1979).

Most recently, in *World-Wide Volkswagen Corp. v. Woodson, supra,* the Supreme Court addressed the *in personam* jurisdiction problem. In *World-Wide Volkswagen* plaintiffs, residents of New York, had purchased a new automobile from a New York dealer in 1976, and the next year while driving through Oklahoma enroute to their new home in Arizona suffered a rear end collision resulting in a fire and severe injury to various members of the family. Plaintiffs filed suit in Oklahoma State Court against the manufacturer, the importer, the regional distributor, and the retailer. Although neither the distributor,

nor the retailer had at any time carried on any activity in Oklahoma the state court upheld the exercise of personal jurisdiction on the ground that it was foreseeable that the automobile would be used in Oklahoma. In rejecting that argument, the Supreme Court stated: "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson, supra* at 295, 100 S.Ct. at 566. Explaining further the court stated:

This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

Perhaps more significant than its treatment of foreseeability, however, was the court's emphasis upon principles of "interstate federalism." *World-Wide Volkswagen Corp. v. Woodson, supra* at 297, 100 S.Ct. at 566. Interjecting state sovereignty considerations into the well-established minimum contacts equation the Supreme Court stated:

... [W]e have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the principles of interstate federalism embodied in the Constitution. The economic interdependence of the States was foreseen and desired by the Framers. In the Commerce Clause, they provided that the Nation was to be a common market, a "free trade unit" in which the States are debarred from acting as separable economic entities. [Citations omitted]. But the Framers also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.

Hence, even while abandoning the shibboleth that "[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established," [citation omitted], we emphasized that the reasonableness of asserting jurisdiction over the defendant must be assessed "in the context of our federal system of government," [citation omitted], and stressed that the Due Process Clause ensures not only fairness, but also the "orderly administration of the laws."

*World-Wide Volkswagen Corp. v. Woodson, supra* at 293–294, 100 S.Ct. at 565.

■ It has generally been held that a single act committed within the Commonwealth resulting in tortious injury is sufficient under the due process clause to confer jurisdiction over the actor, *Darden v. Heck's Inc.*, 459 F.Supp. 727, 731 (W.D.Va.1978), even if the actor is "a mere sojourner within the States." *Navis v. Henry*, 457 F.Supp. 99, 100 (E.D.Va.1978). This is consistent with the position taken by the *Restatement.* According to the *Restatement (Second) of Conflicts*, § 36(1) "a state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act." Pursuant to Comment C of that section "one who misrepresents a fact in the state falls within the scope of [the] rule." The court perceives nothing contrary to the dictates of *International Shoe* in following the *Restatement* rule, and while the Supreme Court's emphasis upon constraints of interstate federalism no doubt heralds an altered approach to personal jurisdiction analysis which will materially affect the answers to a myriad of jurisdictional questions, *see* Wright and Miller, *Federal Practice and Procedure*, § 1067 (Supp.1981); Kamp, *Beyond Minimum Contacts: The Supreme Court's New Jurisdictional Theory*, 15 Ga.L.Rev. 19 (1980); The Supreme Court's 1979 Term, 94 Harv.L.Rev. 107 (1980), this court perceives no principle of state sovereignty implicated in a case such as the present one

where a tort is committed within the geographical confines of the forum state. Accordingly, the court finds there to be jurisdiction over plaintiff's action for deceit.[1]

---

1. Liberally construed plaintiff's complaint also states a claim for relief based on breach of contract. In *Viers v. Mounts*, 466 F.Supp. 187 (W.D.Va.1979), this court found certain negotiations which took place in Virginia and which ultimately led to the formation of a contract in another state to "fall far short of the 'purposeful availment' requirement of *Hanson v. Denckla* ...." *Id.* at 191. In the present case, therefore, where no negotiations took place in Virginia, *a fortiori*, there can be no jurisdiction here over a claim arising from breach of contract.