Charles Dale HARMAN, Plaintiff,

v.

Esther Harman PAULEY, Defendant.

Civ. A. No. 80–1075.

United States District Court,
S. D. West Virginia,
Bluefield Division.

Sept. 24, 1981.

G. Marshall Mundy, Roanoke, Va., E. M. Payne, III, Beckley, W.Va., David Burton, Princeton, W.Va., for plaintiff.

Jerry K. Jebo, Radford, Va., Dan O. Callaghan, Richwood, W.Va., for defendant.

MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION IN OPPOSITION TO TRANSFER

KIDD, District Judge.

Plaintiff, Charles Dale Harman, originally brought this action against defendant, Esther Harman Pauley, in the United States District Court of the Western District of Virginia. Plaintiff is a resident of Georgia and defendant is a resident of Virginia. Jurisdiction was predicated upon diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332. Subsequently plaintiff moved that court to transfer the action to the Southern District of West Virginia, Bluefield Division, pursuant to 28 U.S.C. § 1406(a). That motion was granted; thereafter defendant filed her motion in opposition to the transfer. Defendant argues that the transfer was improper because the Virginia transferor court lacked subject matter jurisdiction and thus lacked the power to transfer and because the West Virginia transferee court lacks personal jurisdiction over the defendant, a resident of Virginia. Implicit in the second argument is the question of whether the West Virginia long-arm statute may be used to obtain service of process over defendant.

Plaintiff and defendant are cousins; the crux of the present dispute centers around certain personal property which plaintiff claims is his by reason of gifts allegedly made to him by Perle T. Harman, the aunt of the plaintiff and defendant. Defendant makes a similar claim. Family quarrels regarding the aunt's personal property have surfaced in the past.

On February 23, 1977, Perle T. Harman sued Charles Dale Harman and several coal companies in the United States District Court for the Western District of Virginia, alleging that Charles Dale Harman had fraudulently and wrongfully caused her to transfer to him certain stock in several coal companies. Subsequently, on July 15, 1977,

Charles Dale Harman sued Esther Harman Pauley and other family members in the United States District Court for the Southern District of West Virginia alleging that the defendants had undertaken to injure him in his reputation and profession and had sought to deprive him of his property, including shares of stock. Perle T. Harman was not named as a party defendant in this suit. Ultimately both law suits were dismissed. Prior to the dismissal Charles Dale Harman, Esther Harman Pauley and several other family members executed a "Release in Full and Covenant Not to Sue."[1] Perle T. Harman was not a party to that contract. The complaint in the district court case in West Virginia was dismissed with prejudice one day after the release was filed.

Sometime thereafter Perle T. Harman was declared an incompetent by the Circuit Court of Mercer County, West Virginia and the First National Bank of Bluefield was appointed as her committee. Plaintiff apparently contacted the bank, indicated that he wished to obtain certain items of personalty allegedly belonging to him which were in Perle T. Harman's house in Bluefield, West Virginia, and was instructed by the bank to file a claim for those items with a Commissioner of Accounts located in Mercer County, West Virginia. On or about April 2, 1979, plaintiff filed a proof of claim with the Commissioner of Accounts, stating that Perle T. Harman had given him certain items of personalty described in letters attached to his proof of claim. In response to the claim filed by plaintiff, the Commissioner contacted Perle T. Harman's heirs by letter of May 2, 1979 which reads in part:

"Mr. Dale Harman claims that various items of personal property were given to him and his wife by Mrs. [Perle] Harman while she was lucid and backs his claim by letters in writing signed by her and witnessed by bank officials.

"This proof of claim was filed before me on April 3, 1979, and there has been no counter-affidavit filed as of this date.

"If no objection to this claim has been filed in this office by July 31, 1979, it will be concluded that the items listed in Dale Harman's claim are his."

Exhibit E, Defendant's Answer.

According to her answer filed herein, defendant Pauley received a copy of this letter and also received a letter from Mrs. Harman's attorney in Bluefield, West Virginia, notifying her of Dale Harman's claim and advising her that she should submit a claim against her aunt's estate for items of personalty allegedly given to her by her aunt. Defendant Pauley's answer further alleges that defendant went to an attorney in Princeton, West Virginia. That attorney filed with the commissioner an affidavit executed in Mercer County, West Virginia, on June 25, 1979 by the defendant which set forth defendant Pauley's claim for the items of personalty previously claimed by plaintiff.

Plaintiff then filed suit in the United States District Court of the Western District of Virginia alleging: (1) defendant breached the release and covenant not to sue by filing a claim against plaintiff's coal stocks and certain items of personalty before a Commissioner of Accounts in Mercer County, West Virginia; (2) in 1976 defendant wrongfully, wilfully and maliciously induced Perle T. Harman to revoke a trust agreement between Perle T. Harman and The First National Exchange Bank of Virginia of which plaintiff was the lifetime income beneficiary and his sons were the residuary beneficiaries; (3) in 1975 defendant wrongfully, wilfully and maliciously sought to file a fraudulent insurance claim in the name of Perle T. Harman with the intention that plaintiff be accused of steal-

---

1. Both plaintiff and defendant base their present claims upon letters allegedly written by their aunt which set forth, at length, itemized lists of personal property. Plaintiff further claims that the release signed by the defendant prohibits her from now asserting any claim to the aunt's personal property. The Court dis-

cusses these "gifts" and the prior litigation without intending to determine in any way whether gifts were actually made or whether the settlement contract or release can be construed to determine ownership of the personalty in dispute.

ing those items; and (4) the continued effort of defendant to deprive plaintiff of his coal stocks and other personalty has wilfully and maliciously injured plaintiff in his reputation, trade and profession. The defendant answered by denying essentially all of plaintiff's allegations.[2] With the case in this posture, Judge Turk transferred the case upon plaintiff's motion to the Southern District of West Virginia.[3] Defendant then filed her motion in opposition to the transfer for the reasons previously stated.

## I. SUBJECT MATTER JURISDICTION

The transferor court did not lack subject matter jurisdiction in the instant case. Jurisdiction of the court was invoked under the diversity provisions and diversity of the parties, as well as the requisite jurisdictional amount, existed at the time of the transfer and still exists.

The complaint before the transferor court at the time of the transfer was sufficient for that court to conclude that it had subject matter jurisdiction. This Court concludes the transfer was proper as regards the question of subject matter jurisdiction. *Raese v. Kelly*, 59 F.R.D. 612 (N.D.W.Va. 1973); Wright & Miller & Cooper *Federal Practice and Procedure*: Jurisdiction § 3827.

## II. PERSONAL JURISDICTION

The transferee court must have or be able to obtain personal jurisdiction over the defendant; otherwise, the Court must find the transfer improper. *See* Wright & Miller & Cooper *Federal Practice and Procedure*: Jurisdiction § 3827 and cases cited therein; 1 Moore's Federal Practice ¶¶ 1.145 [6.–2], 1.146[5] and cases cited therein. Plaintiff argues that he can obtain personal service over the defendant via the West Virginia long-arm statute. *W.Va.Code* § 56–3–33 (1980 Cum.Supp.). Defendant essentially argues that she has not had such contact with the state of West Virginia since June 9, 1978, the effective date of the long-arm provision, which would subject her to proper long-arm service.

Rule 4(e) of the Federal Rules of Civil Procedure provides for service upon a non-resident in any manner prescribed by the forum state's "statute or rule." The long-arm provision of West Virginia defines the limits of this Court's personal jurisdiction over a non-resident defendant. The inquiry required to define those limits is necessarily two-fold: first, does the statutory language permit service of process on the non-resident defendant; and second, does such service and thus the exercise of the Court's personal jurisdiction over the non-resident defendant offend the due process clause of the United States Constitution. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 703 (4th Cir. 1970). *See Humphreys v. Pierce*, 512 F.Supp. 1321, 1323 (W.D.Va.1981).

2. Defendant's answer further stated that, at the time she filed her claim with the Commissioner of Accounts, all issues concerning the ownership of the stock in various coal companies had been settled and that she did not attempt nor intend to make any claim to the Commissioner regarding the stock since the stock was not in the personal estate of Perle T. Harman at that time. The affidavit filed with the Commissioner supports her statement and she has further represented unto the Court, by counsel, that she does not contest Charles Dale Harman's ownership of that stock.

3. Subsequent to the filing of the answer, plaintiff was permitted by the Court to file an amended complaint. The amended complaint alleged two claims: (1) that defendant fraudulently, maliciously and wilfully submitted a false claim to personal property belonging to plaintiff and (2) defendant fraudulently asserted undue influence over Perle T. Harman and caused her to revoke a revocable trust agreement of which plaintiff was a residuary beneficiary. Judge Turk ordered both claims dismissed within 15 days unless plaintiff demonstrated reasons establishing the Court's jurisdiction. The complaint was dismissed and that order of dismissal was subsequently vacated. Thereafter, upon plaintiff's motion, the Court dismissed the amended complaint, without prejudice, reinstated the original complaint without amendment and transferred the case to the Southern District of West Virginia. Thus the complaint now before this Court is the original complaint without amendment which was filed in Virginia.

## A. THE STATUTORY REQUIREMENTS

■ The Court first addresses plaintiff's claims regarding revocation of a trust agreement in 1976 and the attempted filing of a fraudulent insurance claim in 1975.[4] The West Virginia long-arm provision became effective June 9, 1978 and that provision limits exertion of jurisdiction over a non-resident to causes of action arising from certain specified acts set forth in the statute. *W.Va.Code* § 56-3-33(b) (1980 Cum.Supp.).[5] The long-arm provision furthermore is not retroactive: "... and the provisions hereof shall not be available to a plaintiff in a cause of action arising from or growing out of any of said acts occurring prior to the effective date of this section." *W.Va.Code* § 56-3-33(g) (1980 Cum.Supp.). Plaintiff has made no claim that any of the alleged acts giving rise to the trust or insurance claims were committed subsequent to June 9, 1978. Therefore, it is clear to the Court that plaintiff has failed to bring his claims regarding the alleged revocation of the trust and the attempted filing of a fraudulent insurance claim within the statutory reach of the long-arm provision.[6] The statutory language does not permit service of process over the non-resident defendant as to those claims and, accordingly, the Court will dismiss those claims.

■ As to the remaining breach of contract claim, plaintiff seeks to have the Court assert jurisdiction pursuant to *W.Va. Code* § 56-3-33(a)(1) (1980 Cum.Supp.), the "transacting any business in this state" provision. The West Virginia long-arm statute is a modification of Article I of the Uniform Interstate & International Procedure Act; the "transacting any business" language was adopted verbatim from § 1.03(a)(1) of that Act. Many other states, including our sister state of Virginia, have also adopted this provision which greatly expanded in personam jurisdiction over non-residents. *See Note*, 51 Va.L.Rev. 719 (1965); *Note*, 79 W.Va.L.Rev. 382 (1977). In looking to the

4. Plaintiff has submitted another proposed amended complaint to this Court. This amended complaint drops all claims but that of breach of contract and revocation of the trust. The Court, however, must rule upon plaintiff's motion with the complaint before it at the time of transfer; hence the discussion of the alleged injury to plaintiff's reputation by the attempted filing of a fraudulent insurance claim is not superfluous.

5. The pertinent parts of *W.Va.Code* § 56-3-33 read as follows:

"(a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection, shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him, in any circuit court in this state, including any action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:
"(1) Transacting any business in this state:

\* \* \* \* \* \*

"(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section, may be asserted against him.

\* \* \* \* \* \*

"(g) This section shall not be retroactive and the provisions hereof shall not be available to a plaintiff in a cause of action arising from or growing out of any of said acts occurring prior to the effective date of this section."

6. Not only does the Court lack personal jurisdiction over these claims but plaintiff may not have stated claims upon which relief may be granted. As Judge Turk noted in his now vacated order of dismissal, there is no tort of undue influence. Furthermore, a revocable trust by its nature creates interests which the settlor may revoke; the trust agreement itself appears to grant to plaintiff a right to income during his lifetime and nothing more.

Plaintiff's discussion of the time when plaintiff "discovered" that the trust was revoked is irrelevant. The acts, if any occurred and if any were actionable, occurred prior to the effective date of the West Virginia statute.

case law of other jurisdictions regarding the interpretation of the statutory language it would appear that a commercial connotation frequently attaches itself when "transacting any business" is defined. *See, e. g., Vacu-Maid, Inc. v. Covington*, 530 P.2d 137 (Okl.1974); *Frank v. Steel*, 253 Ark. 338, 485 S.W.2d 737 (1972).

This Court is of the opinion that a similarly restrictive interpretation of the West Virginia long-arm provision would be unwarranted. The West Virginia legislature has elsewhere provided for means of serving foreign corporations, regardless of whether that corporation has been authorized to transact business within the state. *See W.Va.Code* § 31–1–15. To assume that the legislature intended *W.Va.Code* § 56–3–33 to apply only to commercial activities of unincorporated businesses would be to apply an unduly limited meaning to that phrase. The term "business" need not necessarily imply an activity tinged with commercial aspects; it is enough if the activity undertaken by the non-resident defendant is such that the non-resident can or should expect to derive a benefit therefrom. The non-resident defendant's activity must be purposeful but it need not be intimately intertwined with the defendant's livelihood.

■ Given the above interpretation, defendant Pauley can be said to have transacted business within the state of West Virginia. After consulting others for advice, she purposefully filed a claim for property located in West Virginia, or at least a claim contesting the plaintiff's "ownership" of property, with a commissioner of accounts in West Virginia. She did so with the knowledge that, if her claim were successful, she would benefit from her activity. *W.Va.Code* § 56–3–33(a)(1) clearly covers her activity and, since her activity occurred subsequent to the effective date of the long-arm statute and it is this activity which forms the basis of the claim asserted by the plaintiff, the Court finds it has personal jurisdiction over defendant Pauley as to the breach of contract claim.

Having found that the language of the long-arm statute is sufficient to encompass plaintiff's breach of contract claim and thus would permit service of process over the defendant, the Court must next determine whether such service of process is permissible under the due process clause of the Constitution.

## B. DUE PROCESS

■ The passage of *W.Va.Code* § 56–3–33 by the Legislature was intended to permit the courts of this state to exercise personal jurisdiction over a non-resident defendant to the extent permitted by the due process clause. This conclusion is supported by the statutory language which allows a single act or omission to be the predicate upon which jurisdiction may be based. The Supreme Court of Appeals of West Virginia has recognized that the long-arm statute "must be read in light of the traditional due process requirements." *S. R. v. The City of Fairmont*, 280 S.E.2d 712 (W.Va.1981). *See Chase v. Greyhound Lines, Inc.*, 211 S.E.2d 273 (W.Va.1975); *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966); *State ex rel Coral Pools, Inc. v. Knapp*, 147 W.Va. 704, 131 S.E.2d 81 (1963); *Gavenda Brothers, Inc. v. Elkins Limestone Company, Inc.*, 145 W.Va. 732, 116 S.E.2d 910 (1960). As recognized by that court, the initial inquiry as to the requirements of traditional due process begins with *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In *International Shoe, supra,* the court held that personal jurisdiction could be asserted over a non-resident defendant provided that defendant had "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The test used to determine whether there are sufficient minimum contacts "cannot be simply mechanical or quantitative" but rather will "depend ... upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process

clause to insure." *Id.* at 319, 66 S.Ct. at 159. The rule enunciated in *International Shoe* focused upon the relationship of the defendant, his conduct and the forum state in resolving the jurisdictional question but no clear-cut parameters were established and thus courts were left to a case by case determination whenever the issue was presented.

*International Shoe* marked the beginning of expanded state court jurisdiction over non-resident defendants. That expansion culminated in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), when the court evaluated not only the defendant's actual conduct but also recognized the forum state's "interest in providing effective means of redress for its residents ...." *Id.* at 233, 78 S.Ct. at 201. Any notion that *McGee* signalled an even broader analysis perhaps leading to a nationwide jurisdictional approach was soon dispelled in *Hanson v. Denkla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In *Hanson* the court reiterated the *International Shoe* formulation of "minimum contacts" and made clear that, when determining the existence of minimum contacts, the focus should be upon the defendant, the litigation and the forum state. *See Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). The defendant must purposefully avail himself of the privilege of conducting activities within the forum state; otherwise, the forum state cannot subject the defendant to its jurisdiction.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

357 U.S. at 253, 78 S.Ct. at 1239 (citing *International Shoe Co., supra*). The importance of *Hanson's* "purposefully availing" language was once again discussed by the court in *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). *See* Wright & Miller, *Federal Practice and Procedure*: Civil § 1067 (Supp.1980).

Any remaining notions of nationwide jurisdiction were rejected in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), when the court "... drastically altered principles of in rem jurisdiction by requiring that they satisfy *International Shoe* standards." (citation omitted). *Note,* 32 U.Fla.L.Rev. 802, n.39. In discussing the lack of minimum contacts in *Shaffer,* the court noted that "... appellants had no reason to expect to be haled before a Delaware court." *Id.* at 216, 97 S.Ct. at 2586. *Shaffer* gave little emphasis to this language and lower courts apparently paid scant attention to the "haled before a forum court" test. That this test is an element to be considered in resolving the jurisdictional "minimum contacts" requirement is now firmly established by subsequent rulings of the court. In discussing "basic considerations of fairness" in *Kulko v. Superior Court, supra,* the court placed emphasis upon the fact that the appellant could not reasonably have anticipated that he would be haled before a court to litigate a child support suit in a forum some 3,000 miles from his home. 436 U.S. at 97–98, 98 S.Ct. 1699–1700.

The preceding discussion has focused on *International Shoe,* its progeny and the analysis necessary to ascertain when a non-resident defendant has had sufficient contact with the forum to permit that forum to exert personal jurisdiction over that defendant. However, minimum contacts would appear to be only one prong of the test with the second prong being the consideration of principles of interstate federalism as discussed by the Supreme Court in the recent case of *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In explaining the consideration to be given interstate federalism, the court stated:

"... [W]e have never accepted the proposition that state lines are irrelevant for jurisdictional purposes, nor could we,

and remain faithful to the principles of interstate federalism embodied in the Constitution. The economic interdependence of the States was foreseen and desired by the Framers. In the Commerce Clause, they provided that the Nation was to be a common market, a 'free trade unit' in which the States are debarred from acting as separable economic entities. [Citations omitted]. But the Framers also intended that the States retain many essential attributes of sovereignty, including, in particular, the sovereign power to try causes in their courts. The sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister States—a limitation express or implicit in both the original scheme of the Constitution and the Fourteenth Amendment.

"Hence, even while abandoning the shibboleth that '[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established,' [citation omitted], we emphasized that the reasonableness of asserting jurisdiction over the defendant must be assessed 'in the context of our federal system of government,' [citation omitted], and stressed that the Due Process Clause ensures not only fairness, but also the 'orderly administration of the laws.' "

*Id.* at 293–294, 100 S.Ct. at 565.

Thus has evolved the test by which this Court must determine whether this forum can exert personal jurisdiction over defendant Pauley.

## III. APPLICATION

■ As the preceding discussion indicates, the principles of due process and federalism do not yield easily to a "cook-book" type of formulation or application. The application becomes even more difficult when a court is faced with what may be characterized, as this case may fairly be, as a "single contact" case. While plaintiff has argued that West Virginia should be considered a "single act" jurisdiction given the Virginia Court's inclination to so character-

ize the State of Virginia under identical statutory language, it is necessary to look not only at the quantity of contacts but more importantly at the quality of those contacts. Thus defendant Pauley's contact with this state, the filing of the claim before the Mercer County Commissioner of Accounts, must be examined carefully since it is that contact which forms the basis of plaintiff's breach of contract claim.

The Court finds the nature of the defendant's conduct to be of paramount importance. The defendant knew the plaintiff was seeking items of personal property which he alleged were his by reason of gift. Defendant, at the time she filed her claim before the Commissioner, asserted that she owned those same items. Defendant knew those items of personalty were located in West Virginia; she decided, based in part upon legal advice given her in West Virginia, that the filing of a claim with the Commissioner of Accounts in Mercer County, West Virginia, was the method by which she would challenge plaintiff's claim and assert her own. Defendant's presence in West Virginia was not in the nature of a mere social visit or vacation, nor can her presence in the state be otherwise deemed fortuitous. Defendant's conduct can only be characterized as purposeful—she was obviously availing herself of the benefit and protection of the laws of West Virginia and had such an expectancy from the moment she filed her claim. Moreover, had defendant pursued her claim before the Commissioner and been successful, she would have received substantial financial benefits from her activity.

While defendant resides in Virginia, her place of residence is not far from Bluefield, West Virginia. Defending an action here imposes little additional financial burden upon her as might a distant or inconvenient forum. Furthermore, defendant must be deemed to have had a reasonable expectation that filing a claim would create a controversy between herself and the plaintiff. As in *World-Wide Volkswagen, supra,* "the defendant's conduct and connection with

the forum state are such that [s]he should reasonably anticipate being haled into court there." 444 U.S. at 297, 62 L.Ed.2d at 501, 100 S.Ct. at 567.

Moreover, the assertion by this Court of personal jurisdiction over the defendant does not offend principles of interstate federalism as embodied in the Constitution. Indeed, the orderly administration of the laws may best be accomplished in West Virginia since the property is located in West Virginia and West Virginia law will apply to the present dispute. This is not to say that relevant choice of law considerations bear any weight in resolving the jurisdictional question; nonetheless, this Court perceives no territorial limitation on the power of this state which would be offended by the exertion of jurisdiction in this case.

Accordingly, it is hereby ORDERED that defendant's Motion in Opposition to Transfer is granted insofar as it applies to any claims alleged other than the breach of contract claim and those claims are hereby dismissed for lack of personal jurisdiction over the defendant. It is further ORDERED that defendant's Motion in Opposition to Transfer is denied insofar as it applies to plaintiff's breach of contract claim, the Court having found that it has personal jurisdiction over the defendant as to that claim pursuant to the West Virginia long-arm provision.

The Clerk is hereby directed to mail certified copies of this Memorandum Opinion and Order to counsel of record herein.