**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee,**

v.

**Michael A. SCHAFFER; Leonard Malin, Appellants,**

and

Spartan Mining Co., Inc., a corporation, LMC Enterprises, Inc., a corporation, Hamilton Associates, Inc., a corporation, and Charles Nagy, Defendants.

No. 83–1482.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1984.

Decided April 17, 1984.

Richard E. Rowe, Charleston, W.Va. (Lucinda C. Masterton, Goodwin & Goodwin, Charleston, W.Va., on brief), for appellants.

Carl L. Fletcher, Charleston, W.Va. (Marshall C. Spradling, Joseph J. Miller, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., on brief), for appellee.

Before WIDENER and CHAPMAN, Circuit Judges, and MAX ROSENN, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

ROSENN, Senior Circuit Judge:

Michael Schaffer and Leonard Malin appeal from a decision of the United States District Court for the Southern District of West Virginia denying their motion to vacate a default judgment entered against them. The sole issue is whether effective notice was provided to the individual defendants so as to perfect substituted service upon the secretary of state in accordance with the pertinent West Virginia long arm statute. The district court held that the service of process and notice were sufficient to confer jurisdiction. The court, therefore, refused to set aside the default judgment. We affirm.

## I.

Spartan Mining Co., Inc., borrowed money from the First National Bank of South Charleston (Bank). It gave the Bank collateral for the loan. In addition, Schaffer and Malin guaranteed the loan both personally and in their capacities as officers of two corporations. When Spartan Mining defaulted, the Bank[1] sold the collateral and instituted a diversity action in federal court for the balance owed against Schaffer, Malin, the corporate guarantors, Spartan Mining, and Spartan Mining's president, Charles Nagy. The Bank served process on Schaffer, Malin, and the corporations pursuant to W.Va.Code § 56-3-33 (Cum. Supp.1983), a West Virginia statute authorizing service on nonresidents. Under the statute, substituted service for nonresident defendants is made on the secretary of state, and notice is accomplished through the sending of a copy of the summons and complaint by registered or certified mail. The Bank served the summons and complaint on the secretary of state and copies were mailed to the defendants. Signed receipts were returned.

Schaffer and Malin did not respond to the summons and complaint. The district court entered a default judgment against them. Many months later,[2] Schaffer and Malin moved to set aside the court's judgment. The claim made by Schaffer and Malin in the district court and on appeal is that the secretary of state did not comply with West Virginia's statutory notice provisions and that therefore the service of process was ineffective. Absent effective service of process, a court is without jurisdic-

---

1. By order entered January 10, 1983, Federal Deposit Insurance Corporation, appellee herein, was substituted for the Bank as plaintiff.

2. The district court entered a default judgment only after an interval of about six months following mail delivery of the summons and complaint to each of the defendants' homes and another ten months elapsed between the entry of the default judgment and the filing of the defendants' motion to set aside the default judgment.

tion to render a personal judgment against a defendant. *Hutchinson v. United States*, 677 F.2d 1322, 1328 (9th Cir.1982). A judgment entered against a party over whom a court lacks personal jurisdiction is void and furnishes a ground for relief under Fed.R.Civ.P. 60(b)(4). *In re Penco Corp.*, 465 F.2d 693, 694 n. 1 (4th Cir.1972).

In the district court, Schaffer and Malin submitted affidavits in support of their motion to set aside the default judgment, stating that they did not sign the return receipts for the court papers mailed to them. Schaffer's receipt was signed by "M. Lipton." Schaffer's affidavit suggested that "M. Lipton" was his elderly mother-in-law who resided at his home. He claimed that his mother-in-law never delivered the papers to him. As for Malin's receipt, Malin denied signing it, although it contained the signature "Malin." He averred in his affidavit that he was not "told by anyone that they accepted a summons and complaint" for him.

■■■ To ascertain the proper method of service, a federal court exercising diversity jurisdiction applies federal law. *See National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Fed.R.Civ.P. 4 enumerates acceptable methods of service. In addition to providing for exclusively federal methods of service, Fed.R.Civ.P. 4 permits a district court to exercise jurisdiction over a defendant who is served pursuant to the service of process rules of the state in which the court sits. In this case, an attempt was made to follow West Virginia's method of service on nonresident defendants. To determine whether process was served properly, we must examine both federal and West Virginia law. "[I]f service of process is made pursuant to state law, the federal court must apply both federal and state law—federal law to determine the constitutional validity of service and state law to see if the procedures set out in the applicable state statute or rule have been followed." 4 C. Wright & A. Miller, Federal Practice & Procedure § 1075 (1969).

■ Schaffer and Malin do not contend that the West Virginia statute is unconstitutional. They admit that the service of process in this case met the constitutional requirements and could have been effective if performed under another statute. The defendants correctly maintain, however, that to be effective service of process must comply not only with constitutional requirements, but also with the provisions of the state statute. This court will respect a state legislature's decision to enact service of process requirements more stringent than those mandated by the Constitution.[3]

W.Va.Code § 56–3–33(c)[4] (Cum.Supp. 1983) provides for service of process on nonresident defendants. Schaffer and Malin maintain that "[s]ervice by this method is sufficient only if the return receipt is attached to the summons and complaint, showing (1) the defendant signed for ser-

---

**3.** The court in *Harman v. Pauley*, 522 F.Supp. 1130 (S.D.W.Va.1981), found that "[t]he passage of W.Va.Code § 56–3–33 by the Legislature was intended to permit the courts of this state to exercise personal jurisdiction over a non-resident defendant to the extent permitted by the due process clause." *Id.* at 1135. This decision, however, involved amenability to service, not method of service.

**4.** The pertinent provisions of the statute state: Service shall be made by leaving the original and two copies of both the summons and the complaint with the certificate aforesaid of the clerk thereon ... with the secretary of state ... and such service shall be sufficient upon such nonresident: Provided, that notice of such service and a copy of the summons and complaint shall forthwith be sent by regis-

tered or certified mail, return receipt requested, by the secretary of state to the defendant and the defendant's return receipt signed by himself or his duly authorized agent or the registered or certified mail so sent by the secretary of state which is refused by the addressee and which registered or certified mail is returned to the secretary of state, or to his office, showing thereon the stamp of the post-office department that delivery has been refused, shall be appended to the original summons and complaint, and filed therewith in the clerk's office of the court from which process issued. If any defendant served with summons and complaint fails to appear and defend within thirty days of service, judgment by default may be rendered against him at any time thereafter.

vice; or (2) the defendant's agent signed for service; or (3) service was refused." They contend that none of these conditions was met because service was accepted by someone other than the appellants or their agents.[5] They argue that the statute requires not only notice and service, but also "notice of service." The district court, however, ruled:

> On the face of the return of service record these provisions were complied with inasmuch as a copy of the summons and complaint was sent to each of these defendants at their respective addresses and both receipt cards were returned signed—with what appeared to be addressee's signature in Malin's case and what could be presumed to be a "duly authorized agent" in Schaffer's case. West Virginia does not require actual notice for service cf process to be valid where the statutory requirements for notification have been met.

*FDIC v. Spartan Mining Co.*, 96 F.R.D. 677, 682 (S.D.W.Va.1983).

The Bank and the secretary of state made a good faith attempt to follow West Virginia's service procedures. The Bank served process on the secretary of state, who sent copies of the summons and complaint by certified mail to the respective homes of Schaffer and Malin. Receipts that appeared to be signed by Malin and by Schaffer's agent were returned and properly filed. There were no other reasonable steps that the plaintiff or secretary of state were required to take to effect proper service. The court then acted on the reasonable assumption that service was effective and that it had personal jurisdiction. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245 (4th Cir.1974), relied

on by the defendants, is inapposite for in that case the plaintiff failed to serve the state auditor general as required by the pertinent West Virginia statute to achieve substituted service.

■ The secretary of state facially complied with the notice requirements of the West Virginia statute by sending copies of the summons and complaint by certified mail to each defendant, properly addressed to his place of residence. Schaffer and Malin must be presumed to have received the notice [6] delivered to their homes in the regular course of mail delivery. *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884). This presumption "is one not easily overcome." *Borden Co. v. United States*, 134 F.Supp. 387, 391 (D.N.J. 1955). The receipts confirm the delivery.

■ Although it may be rebutted, the evidence required to overcome the presumption of receipt of certified mail correctly addressed and delivered to the home of the addressee must be clear and convincing. Evidently, the defendants did not persuade the district court that their affidavits sufficiently rebutted the presumption. In his affidavit in support of the motion to set aside the default judgment, Schaffer acknowledged that the summons and complaint were delivered to his home and receipted for by M. Lipton, his mother-in-law, who resided with him, but he asserted that she did not deliver the registered letter to him or tell him that he received it. Under the West Virginia statute, Lipton, as a member of the household and who receipted for mail addressed to the defendant, constituted his "duly authorized agent." [7]

---

**5.** Subsection (e)(1) of the statute provides:

> (1) "Duly authorized agent" means and includes among others a person who, at the direction of or with the knowledge or acquiescence of a nonresident, engages in such act or acts and shall include among others a member of the family of such nonresident or person who, at the residence, place of business or post office of such nonresident, usually receives and receipts for mail addressed to such nonresident.

**6.** "A letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee." C. McCormick, McCormick's Handbook of the Law of Evidence § 343 (1972) (footnote omitted). The presumption is especially strong when the delivery is by certified mail.

**7.** We recognize that the West Virginia statute refers to a member of the family who "usually receives and receipts for mail addressed to such nonresident." Lipton's receipt of the mail and

Schaffer's denial of receipt, not supported by any affidavit from Lipton or by any other member of the household indicating what became of the certified mail, was insufficient to overcome the presumption of notice of delivery to the addressee. Furthermore, at the hearing on the motion to vacate, defendant's counsel represented that Schaffer knew of the lawsuit for Schaffer communicated with his New York counsel with respect to the service shortly after it was made on two of the codefendants, Spartan Mining Co. and LMC Enterprises Inc. *FDIC v. Spartan Mining Co.,* 96 F.R.D. 677, 679 (S.D.W.Va.1983).

■ In his affidavit in support of the motion to set aside the judgment, defendant Malin averred that the signature on the receipt, "Malin," was not his, that he did not recognize the handwriting, and that he was not served with a copy of the summons and complaint. It is undisputed that copies of the summons and complaint were delivered by certified mail to his home. He too is presumed to have received them. Malin's mincing assertion in the affidavit does not deny notice; he merely denies that it is his signature that is affixed to the return receipt. Furthermore, as the district court concluded, Malin is in no position to deny notice of the proceedings, for he personally signed the receipt on June 8, 1981 for the copy of the summons and complaint sent to his codefendant, LMC Enterprises, Inc.

■ We see no error in the refusal of the district court to set aside the default judgment.

Affirmed.

signing for it is evidence, in the absence of anything to the contrary, that she met this de-